**W. Biddle WALKER, Plaintiff,**

v.

**RELIANCE INSURANCE COMPANY, a foreign corporation, Defendant.**

**Civ. A. No. 33206.**

United States District Court,
E. D. Michigan, S. D.

April 5, 1972.

Richard A. Harvey, Detroit, Mich., for plaintiff.

John Arthur Hamilton, Foster, Meadows & Ballard, Detroit, Mich., for defendant.

## OPINION GRANTING MOTION FOR SUMMARY JUDGMENT.

TALBOT SMITH, District Judge.

This case is before the Court for declaratory judgment pursuant to a marine insurance policy issued by the defendant, Reliance Insurance Company [hereafter referred to as Reliance]. Both parties have moved for summary judgment and have filed briefs in support of their respective motions. Oral arguments were heard, after which the Court requested additional briefs. Upon consideration of the briefs and oral arguments, summary judgment is granted in favor of Reliance.

The facts surrounding the case are not in dispute; only the applicability of the insurance policy to the loss is at issue.

In May of 1968 Reliance caused to be issued to the plaintiff a three year marine insurance policy affording coverage to a thirty-six foot Roamer Cruiser known as "Iron Lady".

In the Fall of 1968, plaintiff delivered the "Iron Lady" to the Keenes Yacht

---

Harbor for winter layup and repairs. In the course of making these repairs, it became necessary to remove the drain plugs from the bottom of the vessel.

Subsequent to making these repairs the vessel was launched by Keenes without the drain plugs being reinserted. As a result, the "Iron Lady" filled with water and sank.

The plaintiff, in support of his claim for coverage, cites three sections of the insurance policy:

Section "A"—Hull Insurance.

### (CLAUSE 1)

"Perils: Touching the adventures and perils we, the Company, are contented to bear, and do take upon us, they are of the seas, Fire, Lightning, Assailing Thieves, Theft of the entire vessel, Jettisons, Barratry of the Master and Mariners, Vandalism and Malicious Mischief; and of all other like perils, losses, and misfortunes, that have or shall come to the hurt, detriment or damage of such vessel or any part thereof.

### (CLAUSE 2)

This insurance is also specially to cover, afloat or ashore, loss of or damage to hull or machinery directly caused by the following: accidents in loading, discharging or handling stores and fittings or in taking in fuel, or in hauling or launching or moving in shipyards; contact with aircraft including articles falling therefrom; contact with land conveyances but only while the vessel is moored or in temporary or permanent storage ashore; while in shipyards or elsewhere, windstorm, tornado, hurricane, earthquake, floods, collapse of buildings or other structures including collapse of shoring, blocking or staging.

### (CLAUSE 3)

*Negligence and Latent Defect:* This insurance also to cover, subject to the terms of this Policy, loss of or damage to hull or machinery through the neg-ligence of master, mariners, engineers or pilots, and of charterers (if chartering is provided by endorsement hereon), or through explosions, bursting of boilers, breakage of shafts, or through any latent defect in the machinery or hull (excluding, however, the cost and expense of repairing or renewing the defective part), provided such loss or damage has not resulted from want of due diligence by the owners of the vessel, or any of them, or by the manager."

It is the position of the plaintiff that, in effect, Reliance has issued an "all risk" policy. As alleged, this type of policy would afford considerably greater coverage than the former Maritime policy which covered only "Perils of the Sea", (Clause 1) and negligence latent defects under the "Inchmaree Doctrine". (Clause 3).

In essence, the plaintiff's briefs and oral arguments narrow the issue of coverage to clause #2. The Court agrees, that if any coverage is applicable to the loss of the "Iron Lady", such coverage must be found in the intent of the parties as expressed in the language of clause #2.

We find that coverage for the loss, under the facts as presented to the Court, cannot be maintained under either clause #1 or clause #3.

The defendant cites Read v. Agriculture Insurance Company, 219 Wis. 580, 263 N.W. 632 (1935), which is strikingly similar to the case at bar. In the *Read* case a vessel was damaged when launched without her drain plugs being closed. The insured brought suit claiming coverage under a marine insurance policy containing substantially the same language as clause #1 and #3 of the policy in the case at bar.

The Court, in *Read*, held that to recover on a marine policy insuring against loss by "perils of sea" [clause #1], the vessel must be seaworthy when it is sent to sea, since damage caused by unseaworthiness of vessel is not caused by a "peril of sea". We hold likewise.

Applying the facts of the case at bar to the holding of the *Read* case, it becomes evident that the loss of the "Iron Lady" was not the result of a "peril of sea".

If clause #3 is to be effective to establish Reliance's liability, it must be because the injury to the vessel resulted from the negligence of "Master, Mariner, Engineers and Pilots", occurring without want of diligence on the part of plaintiff. The loss to the "Iron Lady" appears from this record to have resulted by the negligence of Keenes Yacht Harbor in failing to reinsert the drain plugs.

There is a clear distinction between the activities of a person acting on behalf of the owner in conditioning and launching the boat and those of a master or other officer acting professionally in the handling of the vessel at sea. Since the repairs to the "Iron Lady" culminated in launching the vessel in an unseaworthy condition, it is clear that there is no coverage. Since coverage is conditioned upon the seaworthy character of the vessel at the outset, the plaintiff may not avoid this condition by delegating to Keenes Yacht Harbor the work of putting the vessel into shape.

Interpreting clause #2 by the plain meaning and fair import of its language, it becomes evident that recovery under the clause is limited to situations where loss or damage to the hull is directly caused by an accident in launching. Therefore, it is incumbent upon the plaintiff to present to the Court evidence which establishes a direct causal relationship between the loss and an accident in launching.

This onus has not been met by the plaintiff. By the plaintiff's own pleadings, the "Iron Lady" sank, not because of an accident in launching, but rather by a prior, pre-existing condition, to wit: lack of drain plugs.

The direct cause of the loss was the unseaworthiness of the vessel. The physical act of launching was flawless. There being no accident in the launching directly causing the loss or damage to the "Iron Lady", no coverage is afforded under clause #2. The plaintiff's contention that the launching was, itself, accidental has no merit.

The defendant's motion for summary judgment is granted.

An appropriate order may be presented.