670 WISCONSIN REPORTS.

Merchant's Mutual Ins. Co. vs. Sweet et al.

THE MERCHANTS' MUTUAL INSURANCE COM-
PANY, Plaintiff in Error,

*vs.*

RICHARD M. SWEET and DUNCAN C. REED, for the
use of ALEXANDER MITCHELL, Defendants in Error.

ERROR TO MILWAUKEE CIRCUIT COURT.

It is a well settled rule in the law of Insurance in this country that in addition
to the implied warranty of seaworthiness which applies to the state of the vessel at
the commencement of the risk or voyage, it is also the duty of the assured from
time to time during its continuance, to repair the vessel and keep her in a suitable
condition for the service in which she is engaged; and if they fail to do so and a
loss happens which is attributable to that cause, the assured and not the under-
writers must sustain it.

There may be a breach of the implied warranty of seaworthiness arising from neg-
lect to keep a vessel properly ballasted.

A distinction exists between those acts of the master which are purely profess-
ional and those which he performs as agent of the owners.

*Semble.* The owners of a vessel are bound by the knowledge of its condition
brought home to the master acting as their agent.

The charge of the circuit court that the jury "should not consider the question
of unseaworthiness arising from want of ballast, unless they should be satisfied
that the owners personally knew of the fact," is erroneous.

This case was brought to this court some time since, the facts
of which as contained in the bill of exceptions are voluminous,
but all those essential to the consideration of the points consid-
ered in the opinion of the court, are therein stated. The briefs
and arguments of counsel cover the whole case, and as it would
be difficult to confine them to the point or points adjudicated,
they are reluctantly omitted.

*J. E. Arnold*, for the plaintiff in error.

*E. Mariner*, for the defendants in error.

*By the Court*, COLE, J.   The questions discussed in this case are interesting, and many of them important as affecting the business of marine insurance in this state.   But it would be idle, perhaps, to attempt in this decision to settle these various questions, even if our minds were entirely clear upon them, (as they are not,) and we therefore deem it advisable to leave most of them for further consideration and argument as they may come before us.   In the present case we will confine our attention to the following portion of the charge given by the circuit court, and excepted to by the plaintiff in error; which we deem erroneous and calculated to mislead the jury.   The defendant below asked the court to instruct the jury that if they found from the evidence that the vessel was unseaworthy when it left the port of Milwaukee, on the morning before the accident, and that the loss was directly attributable to such unseaworthiness, then the plaintiffs could not recover.   The court in answer to this instruction gave the following charge to the jury:

" Again on the question of unseaworthiness, it is proved that the vessel was lost by reason of the want of ballast, that is, if it is proved that the squall which capsized her would not have done it had she been reasonably and properly ballasted at the time, then the question will arise were the plaintiffs bound by their policy to keep her so ballasted?   The American rule most probably is, that the assured under a policy like the present are bound to keep the vessel seaworthy during the entire period covered by the policy.   What the term seaworthy means is not readily determined.   I have looked in vain in the books to find a case deciding that the seaworthiness of a vessel depends on the amount of ballast on board.   I am not therefore able to say that ballast is a part of the equipment or provision of the vessel which the owners are bound by their contract at all times to supply and have on board.   Capt. Morley testified, in answer to questions by the defendant, that it was the duty of the captain to provide (or see to,) the ballast in his ship.   And it seems to me to belong properly to the management and not to the provision of the vessel.   And like the overloading of a vessel, the raising of too much canvass, or the neglecting to pump

the vessel, it is in the direction of the officer managing the vessel, and not a matter for which the owners of the vessel are responsible, unless knowledge of the condition of the vessel in this respect is brought home in fact to the owners." And in the same connection the court further remarked :

"Under this view of this point it is not material to the recovery whether there was or was not a deficiency of ballast, or whether the storm would have capsized her had there been a larger amount of ballast. Unless you find it proved that the plaintiffs personally knew of the condition of the vessel, as to ballast, her loss for want of ballast will not release the defendants." A brief glance at some of the facts of the case will show more clearly the correctness and application of the instruction asked for, and refused, as well as more distinctly exhibit the error into which the court fell.

The action was brought to recover the insurance alleged to be due on a time-policy effected on the schooner Ontonagon, owned at the port of Milwaukee ; and which policy commenced on the first day of April, 1851, and continued for one year. The schooner was to be used in prosecuting the freighting business on the lakes, where vessels of the class of the one insured usually navigated. It appears from the testimony of the master, Morley, that the vessel left Milwaukee bay for Bayley's Harbor on the 24th of July, 1851, and that about half-past nine at night of the same day she was capsized on Lake Michigan, off Twin Rivers, in a squall of a few minutes duration. At the time of capsizing, the vessel had about one-fourth of her canvass up, was going light and had but three or four tons of ballast. The weather had been pleasant, but about an hour before the squall there were signs of it. When the vessel capsized it was rainy, not a regular gale, very little wind, very dark, with flashes of lightning. The wind was E. S. E. off the lake. The vessel was pretty close in land to turn a point ; the weather looked threatening, and a little canvass was carried to keep off shore. When the wind shifted to S. W. the vessel heading E. or N. E. E. The wind shifted about west, just enough to shove the sails over, as the sails turned

over the mainsail was run down, and by the time it was down the vessel was over. The wind was not felt upon deck. The master thought 20 or 30 tons of ballast would have kept her on her bottom. The master knew of the condition of the ves sel as to ballast on the morning of the 24th of July, when in Milwaukee bay, and stated to the person he succeeded in command of the vessel that she had not ballast enough. It also appeared from the evidence that violent squalls are frequent on lake Michigan during the months of July and August.

These facts all tended to prove that the vessel left her home port at a season of the year when squalls were most frequent, without cargo, without sufficient ballast, with the knowledge of that fact brought home to the master, and that in consequence of such want of ballast was capsized and lost. Hence one of the grounds of defence to the action was that the vessel was unseaworthy at the time she left port, and that the owners and master had been guilty of such gross negligence and want of ordinary care and prudence in omitting to procure the proper amount of ballast, as to release the underwriters from all liability to pay.

We suppose it to be a well settled rule in the law of insurance in this country, that in addition to the implied warranty of seaworthiness which applies to the state of the vessel at the commencement of the risk or voyage, and which must be strictly complied with as a condition precedent to the policy attaching. It is also the duty of the assured from time to time during the continuance of the policy or voyage, to repair the vessel and keep her in a suitable condition for the service in which she is engaged; and if they fail to do so and a loss happens, which is *attributable to that cause*, the assured and not the underwriters must sustain it. *Copeland et al. vs. New England Marine Insurance Company*, 2 Met. 432; *Paddock vs. Franklin Insurance Company*, 11 Pick. 234; *The American Insurance Company vs. Ogden et al.*, 20 Wend 287; *Starbuck vs. New England Marine Insurance Company*, 19 Pick. 198; *Hazard vs. The New England Insurance Company*, 1 Sumner, 218; 3 Kent, (5th edition), 288; 1 Arnold on Ins.,

674　　　　　WISCONSIN REPORTS.

Merchants' Mutual Ins. Co. vs. Sweet et al.

(Perkin's edition) 668. In the case of *Copeland vs. New England Insurance Company*, C. J. Shaw remarks, upon a very full review of the authorities, that "no case has gone the length of deciding that when there is a long voyage consisting of several stages, or where there is a policy on time, which may last several years, if the vessel becomes damaged and unfit for navigation, it is not the duty of the owner to make the necessary repairs to fit her for the service on which she is destined, and in case of failure to do so, and a loss happens from that cause, that the insurers are liable as for a loss by one of the perils insured against."

Consequently the underwriters in this country are held discharged from any loss which can be distinctly shown to have arisen from the negligence or misconduct of the assured, in not keeping the ship in a proper state of repair, as the implied duty of the assured to use due diligence to keep the vessel in a navigable condition is violated and the underwriters released. And we suppose there may be a breach of the implied warranty of seaworthiness arising as much from a neglect to keep the vessel properly ballasted as from any other cause. A vessel may become unnavigable or unseaworthy, as well from overloading or a want of sufficient ballast as from some defect in the equipment or provision of the vessel. *Deblois* vs. *Ocean Ins. Co.*, 16 Pick. 308. In the case at bar the circuit court in its charge to the jury seems to lay great stress upon the circumstance that it did not appear from the evidence that the owners of the vessel knew of her condition in respect to ballast, when she left the port of Milwaukee on the day of the loss, and plainly intimated that it was the duty of the master to see that the vessel was properly ballasted, and that the owners were not responsible for the master's neglect in this particular, being ignorant of it, and that it was against accidents of this nature arising from misconduct or negligence on the part of officers or agents that a party frequently insures. But still if there was an implied warranty on the part of the owners (as we have supposed there was) to keep the vessel seaworthy during the continuance of the policy,

it would seem that unseaworthiness would operate as a defense to the action, where the loss is distinctly shown to have been occasioned by it. There are undoubtedly certain mistakes of judgment and instances of negligence on the part of officers or crew which the underwriters are responsible for. A loss occasioned by a mistake of judgment or neglect of duty on the part of a commanding officer while acting purely in his official and professional character, may be one of the perils covered by the policy. Or such a default as that instanced by the court in this case where the master raised too much sail, or neglected to have the pumps properly worked, in consequence of which the vessel was lost, is a risk incident to navigation, and assumed by the insurers. A distinction seems to be taken in the cases, and may well exist between those acts of the master which are purely professional, and those which he must be regarded as performing in the character of agent of the owners. If necessary, therefore, we might properly hold that the owners were bound by the knowledge of the condition of the vessel brought home to their agent, the master, and that as between themselves and the underwriters, they alone are responsible for his misconduct. But the principle already announced that the owners are under an implied warranty to use all proper and necessary diligence to keep the vessel seaworthy during the continuance of the policy or voyage, sufficiently disposes of this point in the case.

Of course it was a question for the jury alone to determine from the evidence, whether the vessel was unseaworthy for want of the proper ballast. We have already stated that in our opinion a vessel might be unseaworthy from such a defect. And it was for the jury to say whether that was so in this instance. The circuit court erroneously withdrew this question from the consideration of the jury unless they should be satisfied that the owners personally knew of the want of ballast in the vessel. This qualification was incorrect and calculated to mislead the jury. The judgment of the circuit court must therefore be reversed and a new trial ordered.