Milton M. Haven, J.
This action is presented to the court on stipulated facts. Plaintiff seeks to recover damages to his boat, the ‘ ‘ Whippoorwill ”. The defendant issued to plaintiff a stand *823 ard form of policy of marine insurance, protecting him against all damage, etc., during the life of the policy “ Touching the adventures and perils which the Company is contented to bear, and does take upon itself, they are, of the seas and waters described herein * * * and all other like marine perils, losses and misfortunes, that have or shall come to the hurt, detriment or damage of yacht or any part thereof.”
The stipulated facts reveal that early in July, 1959 the plaintiff was informed that his yacht had been found at its mooring in a sinking condition and had been hauled out at the Orienta Boat Yard. The engine was removed, reconditioned and various other repairs were made at a cost of $652. Since the policy contained a $250 deductible provision, the amount of damages sought is $402.
Three weeks prior to the sinking, the toilet fixture was removed for repairs. It had not been replaced at the time of the occurrence. The outlet from the toilet fixture to the sea was through a gooseneck pipe in the bottom of the yacht’s hull. When the yacht was raised, the outlet was found to be neither capped, fitted with a shut-off valve, nor with any other device to prevent the entry of sea water into the hull. The open end of the gooseneck was between one and three inches above the water line. It was conceded that the boat sank because water had entered the open end of the gooseneck.
We are confronted with a situation in which a vessel, seaworthy so far as its design and general condition with respect to wear and tear are concerned, was, by the acts or omissions of the owner or his agent, permitted to remain in the water after a toilet fixture was removed without the precaution of closing or capping the gooseneck to prevent the entry of water into the hull. The sole question is whether the “peril” involved is covered by the policy. We think that it is not.
The principal coverage clause of the policy starts with the recitation, ‘ ‘ Touching the adventures and perils which the Company is contented to bear, and does take upon itself, they are, of the seas ”. It continues with a list of named perils and concludes with the following clause: ‘1 and all other like marine perils, losses and misfortunes, that have or shall come to the hurt, detriment or damage of yacht or any part thereof.”
Under the principle of ejusdem generis, the scope of the latter clause is modified by the specific perils set forth in the preceding clause. In any event, it covers only perils of the sea. The term, “perils of the sea”, however, as used in a marine policy does not embrace all losses happening on the sea (Brazilian E. & I. Co. v. Firemen’s Fund Ins. Co., 106 Misc. 139, 143). It *824 refers to “ casualties or accidents resulting from the action of the seas. ‘ Fortuitous as defined by Webster, is an event happening by chance or accident. In other words, the ‘ peril of the seas ’ is an accident peculiar to marine navigation. It is a casualty.” (Kermani v. Insurance Co. of North America, 142 Misc. 542, 543.)
In construing the words “ perils of the sea ”, the court in the case of Cary v. Home Ins. Co. (235 N. Y. 296, 300), held that the phrase was not limited to extraordinary perils. ‘ ‘ It covers all kinds of marine casualties due to the fortuitous action of the sea * * * but it includes only a sea damage, occurring at sea, a peril of the sea. A peril on the sea is not enough.”
There is no evidence in the case at bar indicating that an unusual action of the sea caused the loss. Failure to properly close a gooseneck by the plaintiff during repairs could hardly be classified as a fortuitous act of the sea; on the contrary what happened might be looked upon as being rather usual.
Plaintiff seems to contend that the sinking and resulting damage were produced by a peril of the sea inasmuch as the boat was seaworthy at the time. Following the sinking, tests were made and the hull was found to be tight and free of leaks. Since the removal of the toilet fixture, the boat was used several times. On July 5, 1959, the boat was moored and on July 11, it sanie. Plaintiff assumes, therefore, that the fortuitous action of the sea was the proximate cause of the loss, and does so even though the damage is admittedly ascribable to the failure of properly closing the gooseneck in question.
It is felt that the law does not sustain his position. At most it may be said that proof of seaworthiness at the inception of the risk, may be enough to create a prima facie case. However, it seems to us that the owner must fulfill his own duty of exerting due diligence to keep the vessel in good order and in a seaworthy condition. A defect of seaworthiness, which arises after the commencement of the risk and is permitted to continue from want of ordinary prudence and diligence on the part of the owner or his agents, discharges the insurer from liability for any loss which results from such want of prudence or diligence. It does not affect the contract of insurance as to any other risk or loss covered by the policy and not caused or increased by such lack of diligence by the owner.
In the case of Berwind v. Greenwich Ins. Co. (114 N. Y. 231, 234), the court held: “ The plaintiffs, under such a policy, make out a prima facie case by showing seaworthiness at the inception of the risk. But in time policies there is implied a *825 warranty that the vessel will be kept in repair and made seaworthy at all times during the continuance of the risk, so far as that is reasonably possible, and this implied covenant imposes upon the insured the duty of active diligence to keep the vessel in good order and in a seaworthy condition.”
“A warranty of seaworthiness, unless otherwise extended, is satisfied, however, when seaworthiness exists at the inception of the risk ”. (Smith v. Northwestern F. & M. Ins. Co., 246 N. Y. 349, 358.) The court further stated: “If the insured suffers the vessel to become unseaworthy thereafter, this does not vitiate the policy unless the later condition was due to his neglect or other fault, nor even then unless a causal relation exists between the defect and the loss ”.
Plaintiff in further support of his claim relies on the rule laid down in the case of Clarke & Co. v. Mannheim Ins. Co. (210 S. W. 528 [Tex.]) wherein the court held that where a vessel listed and sank while in harbor because a watchman who was a member of the crew, neglected to close a sea cock opened to take in water for use in boilers, the accident was one of the perils of the sea, and a marine insurance company was liable under its policy for the expense of raising and repairing the vessel.
We feel, however, that this case is distinguishable. For although it considers certain negligent acts of persons as synonymous with fortuitous acts or perils of the sea, it restricts its application only to professionals or crew members of the damaged vessel.
To give proper construction to the opinion of the court in the Clarke & Co. case, and to determine if a similarity or a distinction exists in relation to the facts in the case at bar, it becomes necessary to consider the scope of the “Inchmaree ” provision of the policy. That clause reads in part as follows: “ This insurance shall also cover (subject to the deductible coverage, if any) loss of or damage to the Hull or Machinery directly caused by the following: * * * Negligence of Masters, Mariners, Engineers or Pilots; Provided such loss or damage has not resulted from want of due diligence by the owners of the yacht, or any of them, or by the Manager or by the Assured.”
It is clear then, that if this provision of the policy is to effectively establish the liability of the defendant it must be because the damage to the boat resulted from the negligence of “ Masters, Mariners, Engineers and Pilots,” occurring without want of diligence on the part of plaintiff or his “ managers ”.
Even though the stipulated facts fail to reveal the person who removed the fixture in question, it may be assumed that there *826 was either a want of diligence on the part of the plaintiff or that the negligence was that of the owner’s agent.
In either event, the person who removed the fixture is not within the description of persons whose negligence is contemplated by the Clarice & Co. case and the character of the act which was negligently performed removes it from the coverage of the policy.
There is a well-defined distinction between the activities of an owner of a person acting on his behalf in conditioning and repairing a vessel and those of a master, officer or crew acting professionally in the handling and operating of the vessels at sea. If the repairs or conditioning of a vessel by an owner or his agent culminates in making that vessel unseaworthy, it is clear to us that the insurer would be discharged from liability, even though this would not be so if there were negligence in the discharge of some professional duty in connection with the handling and operation of the boat, in which case the “Inchmaree ” clause would apply. (See Read v. Agricultural Ins. Co., 219 Wis. 580.)
The distinction is well stated in the case of Merchants’ Mut. Ins. Co. v. Sweet (6 Wis. 670, 675), wherein the court held: “ There are undoubtedly certain mistakes of judgment and instances of negligence on the part of officers or crew which the underwriters are responsible for. A loss occasioned by a mistake of judgment or neglect of duty on the part of a commanding officer, while acting purely in his official and professional character, may be one of the perils covered by the policy. Or such a default as that instanced by the court in this case where the master raised too much sail, or neglected to have the pumps properly worked, in consequence of which the vessel was lost, is a risk incident to navigation, and assumed by the insurers. A distinction seems to be taken in the cases, and may well exist between those acts of the master which are purely professional, and those which he must be regarded as performing in the character of agent of the owners.”
Applying the principles of law herein cited to the Clarke & Co. case (supra), it is safe to conclude that a recovery on the policy was permitted in that case since the unseaworthiness of the vessel arose from the negligence of a member of the crew. He is considered in the category of ‘ master, engineer, mariners or pilots ” and his negligence was the result of acting professionally in the operation of the vessel.
The “Inchmaree” clause, though referring to “due diligence ” of the owner to keep the vessel seaworthy, was not *827 intended to restrict coverage but to broaden it by limiting warranty of seaworthiness where such unseaworthiness arises from the negligence of the master, engineer, mariners or pilots. (See Saskatchewan Govt. Ins. Office v. Spot Pack, 242 F. 2d 385.)
An insured cannot invoke the ‘ ‘ Inchmaree ’ ’ clause to cover losses negligently caused either by an independent contractor or by friends working aboard the owner’s boat. (See Founders’ Ins. Co. v. Rogers, 281 F. 2d 332.) Friends of an insured owner helping him “laying up” his ship could not be considered engineers within the clause covering damage caused by negligence. Where the owner was himself directing activities there was a lack of due diligence as would preclude recovery. (See Wigle v. Ætna Cas. & Sur. Co., 177 F. Supp. 932.)
As we read the authorities, the court concludes that the sinking of plaintiff’s boat was occasioned neither by a “peril of the sea ” nor by the negligence of “ master, mariners, engineers or pilots ” within the scope of coverage of the policy of marine insurance. The damage to plaintiff’s vessel was not covered by the policy. Complaint of the plaintiff is dismissed.