Lillian REISMAN, Appellant,

v.

NEW HAMPSHIRE FIRE INSURANCE
COMPANY, Appellee.

No. 19100.

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1963.

Arthur Roth, Miami, Fla., for appellant.

Cromwell A. Anderson, Miami, Fla., for appellee.

Before CAMERON, JONES and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

Lillian Reisman, plaintiff-appellant, appeals from a judgment in favor of New Hampshire Fire Insurance Company, defendant-appellee, hereinafter called insurer, on an insurance policy issued by New Hampshire to Mrs. Reisman on a houseboat which sank in the Intercoastal Boat Yard in Miami, Florida, on or about July 29, 1959.

The policy of marine insurance issued by the insurer covered the Jopson built houseboat owned by Mrs. Reisman. It contained the following typical insuring clause:

"Touching the adventures and perils which we, the assurers, are contented to bear, and do take upon us, they are of the seas, rivers, lakes, and/or other inland waters, fire, assailing thieves, jettisons, barratry of the Masters and Mariners, and of all other like perils, losses and misfortunes, that have or shall come to the hurt, detriment, or damage of said yacht or any part thereof."

In July 1959, Henry Meyers of C. A. Hansen Corporation, insurer's Miami agent, went to Dinner Key Yacht Basin in Miami, Florida, where the vessel was permanently maintained, inspected the boat, and wrote the following in a letter to Mrs. Reisman:

"I notice the bottom of your boat is excessively foul with barnacles and oysters, therefor it is time that the boat was hauled for a paint job."

Mrs. Reisman and her husband made arrangements with the Intercoastal Boat Yard to have the boat towed up the Miami River to the yard. Prior to leaving Dinner Key, Mr. Reisman called C. A. Hansen Agency to confirm coverage on the trip and received a telegram to this effect:

"Vessel covered to make one trip to Intercoastal Boat Yard from Dinner Key Yacht Basin. C. A. Hansen."

The trip up the Miami River was uneventful. At the yard the vessel was tied to the pier and electrically connected. The Reismans had dinner aboard the vessel, and prior to their leaving, the bilge was pumped out and a normal amount of water was found. The next morning, however, the vessel was found sitting on the bottom with the water partly engulfing the deck housing. Hempstead & McGrath, professional salvors, were hired to raise the sunken vessel and during the attempted raising, the entire superstructure or house section of the boat was crushed flat. The vessel was declared a constructive loss and attempts to salvage were then abandoned. When the vessel was finally raised, same ten months later, the bottom was found to be honeycombed with wormholes which were assessed as the cause of the sinking. The insurer refused to pay on the insurance policy because it claimed that a sinking resulting from a deteriorated worm-eaten bottom was not a risk covered by the policy.

At the trial of the case, the Court inquired of the parties as to what issues of fact were to be submitted to the jury, and upon the insurer's failure to come forward with any issues of fact, and the Court's statement that there were no issues of fact; both parties waived the jury and it was excused.[1] The Court found the issues in favor of the insurer, holding that the cause of the sinking was the worm-eaten condition of the hull, and that the insurer was not liable since this did not constitute a "peril of the sea" as contemplated by the policy.

Suit was filed in the state court, but the case was removed to federal court as a diversity case. Damages of $9,000.00 were claimed under the Hull Policy, plus $31,000.00 for damages resulting from alleged negligent acts of the salvors as agents of the insurer. The latter claim was the subject of the District Court's subsequent summary judgment when it held that the insurer was not liable for any amount in excess of $9,000.00. Mrs. Reisman contends that the granting of summary judgment as to all claims in excess of $9,000.00 divested the Federal Court of jurisdiction since there was not more than $10,000.00 in controversy. We disagree. The decisions under 28 U.S.C.A. § 1447 make it clear that once jurisdiction has attached, it cannot be subsequently divested. Haviland v. Western Union, 119 F.Supp. 438 (D.C.S.D.Tex. 1954); Service Finance Corporation v. Coppard, 5 Cir., 1940, 116 F.2d 488. In order to require a remand back to the state court for lack of jurisdiction, there must have been a lack of jurisdiction at the time of removal from the State to the Federal court. At the time of removal there was a bona fide claim in excess of $10,000.00. We find that the District Court had jurisdiction.

Mrs. Reisman offered no evidence which controverts the Court's finding that the cause of the sinking was the wormeaten and deteriorated condition of the vessel's bottom. We accept such finding as correct. Remaining for our determination is whether the sinking due to the above described condition was a risk covered by the policy.

The authorities are clear (and the insured has cited none to the contrary) that the loss of a vessel under circumstances here present does not permit recovery against the insurer. In R. T. Jones Lumber Company, Inc. v. Roen Steamship Company, 2 Cir., 1959, 270 F. 2d 456, the Court said:

"Perils of the seas are understood to mean those perils which are peculiar to the sea, and which are of an extraordinary nature or arise from irresistible force or overwhelming power, and which cannot be guarded against by the ordinary exertions of human skill and prudence."

The term "perils of the sea" as used in marine insurance policies does not mean that the policy covers all losses that occur upon the sea. As stated in Appleman Insurance Law and Practice, Vol. 5, § 3272:

"A marine policy protects against extraordinary accidents and perils,

---

1. "The Court:
"Now, you are both making a motion for a directed verdict?
"Mr. Roth: Yes, sir.
"The Court:
"I agree with both of you, but there is no issue of fact to submit to the jury. I asked you at the outset of the case and at the end of the case and you haven't pointed out any issue of fact; so there is no issue of fact for the jury.
"Therefore, I think the Judge is going to have to decide the case. That means that I don't want to give a pop-off decision on this case. You presented authorities to me. However, I would like to have the authority submitted to me on both sides with your proposed findings and conclusions and then I would have to make a decision.
"Will counsel proceed that way?
"Mr. Roth: We don't need a jury.
"The Court: Will both of you waive a jury at this time so we can let them go?
"Mr. Roth: I will waive the jury.
"Mr. Anderson: I will waive it also.
"The Court: It is a question of law and I don't want to make a pop-off decision.
"Call the jury back in."

but not against natural decay and ordinary wear and tear."

Damage to the bottom of a boat by worms, in an area where worms ordinarily cause such damage, is not an extraordinary or fortuitous peril of the sea which cannot be avoided by human skill and prudence. The loss in this case was an excepted peril and not within the coverage of the policy. Hazard's Administrator v. New England Marine Insurance Co., 8 Pet. 557, 33 U.S. 557, 8 L.Ed. 1043; Arnold on Marine Insurance, 13 Ed. § 825.

■■ Nevertheless, the insured insists that since the insurer, whose agent had observed the foul bottom, requested that she have her boat hauled and painted (which may have disclosed the condition) it is liable for the loss. While this argument is appealing, the insurance company cannot be said to have known of the presence of worms, or teredos as they are called. Oysters and barnacles were visible from ashore, but the worms could only be detected by raising the vessel (which was subsequently done) and observing the bottom. It is the law of this Circuit that conditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action. C. E. Carnes & Co. v. Employers' Liability Assur. Corp., 5 Cir., 1939, 101 F.2d 739. To grant the insured coverage because of this conduct would be to extend the coverage of the policy itself, which is prohibited.

■ Mrs. Reisman also seeks to apply the doctrine of estoppel to provide coverage for herself from the fact that the insurer got her permission to have the vessel raised some ten months subsequent to the sinking to determine the cause of the sinking. This she claims was to her detriment. As was stated before, the vessel sank in calm water while tied to the pier. When a vessel sinks in calm water, a presumption arises that the vessel was unseaworthy in some particular. Boston Insurance Co. v. Dehydrating Process Co., 1 Cir., 1953, 204 F.2d 441. This is a rebuttable presumption and the insured can prove that the vessel was seaworthy before the sinking. Once this particular presumption is rebutted, there arises a counter presumption that the loss was caused by a "fortuitous peril of the sea". The District Court did not consider the houseboat's seaworthiness, or lack of it, in this case because it found that the loss was caused by an excepted peril—worms.

■ In Reliance Insurance Company v. The Escapade, 5 Cir., 1960, 280 F.2d 482, relied upon by Mrs. Reisman, the Court applied the doctrine of estoppel in providing coverage even though there was an admitted breach of a promissory warranty. However, in that case the cause of the loss was a covered "peril of the sea" and not an excepted one. The Court was careful to point out that the estoppel applied in that case did not create a new liability or grant a coverage not already in the policy, as in the case when the peril causing the loss was not covered by the policy. In the case at bar, the loss was not caused by a "peril of the sea" and to apply the doctrine of estoppel would be to extend the coverage of the policy.

Also, in view of the presumption of unseaworthiness, Boston Insurance Co. v. Dehydrating Process Co., supra, due to the sinking in calm water while in a berth and tied to the pier, the fact that the vessel was raised does not seem to be either detrimental to Mrs. Reisman or action inconsistent with a denial of liability.

■ Neither is the condition of the boat which caused the loss a "latent defect within the provisions of the Inchmaree Clause" in the policy. A latent defect is defined in Black's Law Dictionary, 4 Ed., as a defect in which a reasonably careful inspection would not reveal. In Waterman S.S. Corp. v. United States S.R. & M. Co., 5 Cir., 1946, 155 F.2d 687, the Court said:

"A true latent defect is not a gradual deterioration but is a defect in the metal. The ship owner has the

burden of showing that the latent defect was not discoverable."

It follows that the worm-eaten condition of the boat, plainly visible in the Exhibits before this Court, is not a latent defect within the meaning of that term.

Damages caused by the acts of the salvors, Hempstead & McGrath, are not recoverable from this named insurer because the salvors were not agents of the insurer but were found by the Court to be independent contractors. While they are liable personally for their negligence, if any, such negligence is not covered by the policy in question.

The judgment of the District Court is

Affirmed.