**COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK**

v.

**William DANIELS and the First Freeport National Bank of Freeport.**

**Civ. A. No. 69–H–649.**

United States District Court,
S. D. Texas,
Houston Division.

May 18, 1972.

L. Glen Kratochvil, Schirmeyer & Kratochvil, Houston, Tex., for plaintiff.

Dale Harvill, Brown, Kronzer, Abraham, Watkins & Steely, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

The first question necessary for decision in this case concerns the application of a marine insurance policy provision voiding coverage in the event of sale, assignment or change in management of the insured vessel.

On January 19, 1968, plaintiff insurance company issued its marine policy number H–2255 covering the hull of the wood diesel fishing vessel RANGER, insuring such vessel against the perils named therein for a period of one year. The premium on this policy was paid in full by the vessel owner. In August of 1968, Bobbie L. Daniels, the documented owner of the vessel, entered into an installment sales contract with Steve Walker who agreed to purchase the RANGER for $6,300. The record reflects that Walker paid $1,000 as down payment on the vessel and was to pay the balance of $5,300 in six (6) equal installments of $883.33 each without interest. These payments were to be made to the order of Bobbie L. Daniels and the First Freeport National Bank jointly until the preferred ship's mortgage held by the bank was paid off. The contract further provided that the seller would continue to keep insurance in force on the vessel until such time as the sale was completed in February, 1969. When the full purchase price of $6,300 was paid, the seller was to make a full and free conveyance by bill of sale to the purchaser. In the event of default by the purchaser, the seller had the right to repossession. After taking possession, Walker as purchaser made the first payment of $883.33, in September, 1968 pursuant to the contract. Walker thereafter defaulted on the contract, and no further payments were made.

On January 1st or 2nd, 1969, while the RANGER was moored to a dock at

Rockport, Texas, and with favorable weather conditions prevailing, the vessel sank. When it was raised on January 16, 1969, it was discovered that the sea valve of the RANGER was open. It is undisputed that the proximate cause of the sinking was the open sea valve on the vessel.

The parties have stipulated that prior to and at the time of the loss the RANGER was in the custody and control of William Daniels, husband of the documented owner. No master or crewmen were aboard or attached to the vessel at that time.

Plaintiff insurance company alleges that the shrimp trawler installment sales contract between Bobbie L. Daniels and Steve Walker, executed during the term of the subject policy, was in direct violation of the terms of the insurance contract, which provides in part:

> This insurance shall be void in case this policy or the vessel named herein shall be sold, assigned, transferred or pledged, or if there be any change of management or charter of the vessel without the previous consent in writing of this company.

No notice to the insurance company of the change of management and transfer was made by the owner, and no written consent was given by the insurance company.

As to whether there was a violation of the provisions of the insurance policy, the plaintiff first alleges that liability under the policy is absent, not because the peril which resulted in sinking is not covered, but because the action of the assured in changing the management of the RANGER without obtaining permission resulted in forfeiture of the policy coverage.

■■ The Court finds that there was a change in the management of the vessel when Walker took possession in September, 1968, and that this change or transfer amounted to a breach of the clause cited, *supra*. However, the Court is further of the opinion that thereafter this breach was cured and that coverage under the policy was revived prior to the time of the sinking of the RANGER. The law is clear that violations of such policy provisions are looked upon as bringing about only a temporary forfeiture or suspension. When the breach has been cured, the suspension ceases to be operative:

> Consequently coverage is not permanently destroyed. It is suspended so long as, but only so long as the violation of the specified basic policy requirements continue. Equally clear, coverage is revived the moment the breaches or conditions cease.

Lineas Aereas Colombianas Expresas v. Travelers Fire Insurance Company, 257 F.2d 150, 155 (5th Cir. 1958); Reliance Insurance Company v. The ESCAPADE, 280 F.2d 482, 487 (5th Cir. 1960); Henjes v. Aetna Insurance Co., 132 F.2d 715, 718–719 (2d Cir.), cert. denied, 319 U.S. 760, 63 S.Ct. 1316, 87 L.Ed. 1711 (1943). Thus, if at the time of the sinking the possession and management of the RANGER had remained in Steve Walker, the policy would have been void. However, it is undisputed that Bobbie L. and William Daniels had regained custody and control of the vessel. In fact, William Daniels slept aboard the RANGER on the night of December 31, 1968, and conducted an inspection of the vessel the next day preparatory to making another effort to sell the RANGER to another party.

Even though liability under the policy was only temporarily suspended, there remains the question as to whether the loss sustained by the sinking of the RANGER falls within the purview of the marine insurance policy. Contained in the policy is a variation of the typical insuring clause covering losses from assailing thieves, barratry of the master and mariners and all other perils of the sea. Also contained is an Inchmaree Clause covering losses from the negligence of the master, mariners, engineers or pilots, provided that such loss or damage has not resulted from want of due diligence by the assured, the owners or managers of the vessel, or any of them.

In order to find liability on the part of the insurer, the Court must find that the sinking of the RANGER at the dock in calm waters in a protected harbor because of an open seacock falls within the perils insured against and did not result from lack of due diligence by the owners of the vessel.

██ ██ It is manifestly certain to this Court that such an occurrence was not occasioned by a peril of the sea, as that phrase has been construed by the case law. Wigle v. Aetna Casualty & Surety Co., 177 F.Supp. 932 (E.D.Mich. 1959) contains an almost identical fact situation. There, a 59 foot auxiliary cutter sank at her winter dock because her seacock had been left open when one of the owner's friends, assisting with winter lay up duties, failed to close the seacock valve when disconnecting the hose. The court stated:

Insurance policies cover only risks, not certainties. Therefore, a policy insuring against "perils of the sea" covers only fortuitous events resulting in loss, rather than events which must happen. Perils of the sea must be "of the sea" and not merely "on the sea". Where omissions of the owner-assured and his friends on board are the sole direct, effectual and proximate cause of the sinking, there is no loss by "peril of the seas."

177 F.Supp. at 933. *See also* King v. Liverpool & London & Globe Ins. Co., 37 Misc.2d 822, 238 N.Y.S.2d 799 (N.Y. City Ct. 1962). The court went on to find that, even if it could be assumed that negligent acts occurring during the laying up of a vessel would be insured risks if performed by masters, mariners, engineers or pilots, such negligent acts caused by the owner-assured or his agent were expressly excluded from coverage under the policy by the Inchmaree Clause.' That is, even though certain negligent acts of certain persons are considered to be synonymous with fortuitous acts or perils of the sea, this is true only as applied to professionals or crew members of the vessel. *See* King v. Liverpool & London & Globe Ins. Co.,

37 Misc.2d 822, 238 N.Y.S.2d 799 (N.Y. City Ct.1962).

If the repairs or conditioning of a vessel by an owner or his agent culminates in making that vessel unseaworthy, it is clear to us that the insurer would be discharged from liability, even though this would not be so if there were negligence in the discharge of some professional duty in connection with the handling and operation of the boat, in which case the "Inchmaree" clause would apply.

238 N.Y.S.2d at 803.

██ It has been repeatedly emphasized that the Inchmaree Clause was added to marine policies to expand coverage subsequent to court decisions which had unduly restricted liability under such policies, Tropical Marine Products, Inc. v. Birmingham Fire Ins. Co., 247 F.2d 116, 122 (5th Cir.), cert. denied, 355 U.S. 903, 78 S.Ct. 331, 2 L.Ed.2d 260 (1957). An Inchmaree Clause does in fact underwrite unseaworthiness of many types, such as that occasioned by the negligence of the master or that resulting from a latent defect in hull or machinery. *Id.* at 123. In the instant case, as in any case when a vessel sinks in calm waters, a presumption arises that the vessel was unseaworthy in some particular, Reisman v. New Hampshire Fire Ins. Co., 312 F. 2d 17, 20 (5th Cir. 1963); Boston Ins. Co. v. Dehydrating Process Co., 204 F.2d 441 (1st Cir. 1953). Once this presumption attaches, coverage must be denied unless (1) the insured can prove that the vessel was seaworthy before the sinking, thus raising the counter presumption that the loss was caused by a fortuitous peril of the sea, or (2) the unseaworthy condition was caused by actions or defects falling within the purview of the Inchmaree Clause. The Court must find here that the RANGER was unseaworthy and that such unseaworthiness was occasioned by the lack of due diligence of the owner of the vessel.

Accordingly, this Court holds that the Marine Hull Policy No. H–2255 issued by plaintiff, Commercial Union Insurance

Company of New York, did not cover the loss claimed herein by defendant. Counsel will submit a proposed judgment consistent herewith within twenty (20) days from date, agreed as to form, for consideration and entry by the Court. It is so Ordered. The clerk will notify counsel.