**JAMES R. VERTICHIO, GARY B. VERTICHIO and ROBERT J. VERTICHIO d/b/a CAPTAIN ROSS CARIBBEAN LOBSTER COMPANY, Plaintiffs**

v.

**ENNIA GENERAL INSURANCE COMPANY, Defendant**

Civil No. 28/82

Territorial Court of the Virgin Islands

Div. of St. Croix at Christiansted

August 17, 1983

JOEL HOLT, ESQ. (HOLT & GRONER), Christiansted, St. Croix, V.I., *for plaintiffs*

JEAN-ROBERT ALFRED, ESQ. (ALFRED & BRADY), Christiansted, St. Croix, V.I., *for defendant*

BEN J. WEAVER, ESQ. (WEAVER, WEAVER & LARDIN, P.A.), Fort Lauderdale, Florida, *for defendant*

PETERSEN, *Judge*

## MEMORANDUM OPINION
## INTRODUCTION

This is an action to recover under a marine insurance policy for damages caused to a vessel by shipworms. The essential facts are as follows: In early 1979 James, Gary and Robert Vertichio, doing business as Captain Ross Caribbean Lobster Co. (plaintiffs), bought a boat named the "Joe Christmas" in Virginia, and sailed it to the Virgin Islands. In both January and May 1980, while the vessel was tied up at the northeast end of the commercial pier at Gallows Bay, Christiansted, St. Croix, the lines securing the boat were removed and left slack. This caused the boat to freely bump against the dock and pound against the bottom. This contact with the dock and bottom damaged the vessel, causing water to steadily stream into the bilge. Although the bilge pumps were maintaining the water at a manageable level, it was necessary for plaintiffs to check the level every fifteen to twenty minutes after the second incident to make sure the bilge level was not so high as to get the engine parts wet. Plaintiffs notified St. Croix Marine that the boat had to be hauled out of the water and the damage fixed. Although plaintiffs repeatedly checked with St. Croix Marine and were repeatedly told that the boat would be hauled in a week or two, the vessel sat idly in the water at St. Croix Marine, waiting to be hauled, for approximately six months, from January to June 1981. During this period the vessel partially submerged three times as a result of problems with the bilge pumps, and in February 1981, plaintiffs started noticing signs of worm damage to the hull. The shipworms, known as Toredos,

were boring small holes into the ship's hull, causing pinhole leaks. As a result of St. Croix Marine's failure to haul the boat, plaintiffs made arrangements to bring the boat to Tortola Yacht Services in Tortola, British Virgin Islands, in the summer of 1981, where it was hauled and surveyed. The marine surveyor concluded that it would cost Nineteen Thousand Four Hundred Ninety-Seven Dollars and Sixty Cents ($19,497.60) to repair the worm damage. Plaintiffs filed a claim under their marine insurance policy issued by Ennia General Insurance Co. (defendant), which policy was effective from March 3, 1981 to March 3, 1982. The policy includes an Eleven Thousand Dollars ($11,000.00) deductible for each claim and provides, in pertinent part, as follows:

## PERILS

Touching the adventures and Perils which the Underwriters are contented to bear and take upon themselves, they are of the Seas, Men-of-War, Fire, Lightning, Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of Mart and Counter-Mart, Surprisals, Takings at Sea, Arrests, Restraints and Retainments of all Kings, Princes and Peoples, of what nation, condition or quality soever, Barratry of the Master and Mariners and of all other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the Vessel, or any part thereof, excepting, however, such of the foregoing perils as may be excluded by provisions elsewhere in the Policy or by endorsement thereon.

## ADDITIONAL PERILS (INCHMAREE)

Subject to the conditions of this Policy, this insurance also covers loss of or damage to the vessel directly caused by the following: accidents in loading, discharging or handling cargo, or in bunkering; accidents in going on or off, or while on dry-docks, graving docks, ways, gridirons or pontoons; explosions on shipboard or elsewhere; breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any latent defect in the machinery or hull, (excluding the cost and expense of replacing or repairing the defective part); breakdown of or accidents to nuclear installations or reactors not on board the insured vessel; contact with aircraft rockets or similar missiles, or with any land conveyance; negligence of charterers and/or repairers, provided such charterers and/or repairers are not an

11

assured hereunder; negligence of masters, officers,. crew or pilots; provided such loss or damage has not resulted from want of due diligence by the assured, the owners or managers of the vessel, or any of them. Masters, officers, crew or pilots are not to be considered owners within the meaning of this clause should they hold shares in the vessel.

The defendant has denied coverage.

The issues presented are: Is the policy at issue an "all-risk" policy or a "specific perils" policy? Which party has the burden of proof? Was this burden of proof met? Is the loss incurred of a type that comes within the coverage provided by the policy?

## DISCUSSION

### I. *Type of Policy*

██ The question which is addressed here is whether the marine insurance policy at issue is an "all-risks" or a "specific perils" policy. This is a question of construction. The body of the policy determines the type of coverage. 11 Couch on Insurance 2d, §§ 43:2 at 15 and 43:82 at 59 (Rev. ed. 1982). The example cited in Couch, supra, § 43:1 at 11–12, is almost exactly the same as the policy at issue, and is considered to be a "covered" or "specific" perils policy. This, in addition to a number of cases where policies quite similar, if not precisely the same, have been determined not to be all-risks policies but rather were held to extend coverage only to losses occurring as a direct result of a peril enumerated in the policy, makes it very clear that the policy under examination by this Court is a "specific perils" policy. See, e.g., Darien Bank v. Travelers Indemnity Co., 654 F.2d 1015 (5th Cir. 1981); Vining v. Security Ins. Co. of New Haven, 252 So.2d 754 (La. Ct. App. 1971); Pacific Dredging Co. v. Hurley, 397 P.2d 819 (Wash. 1964). The court in Pacific Dredging Co., supra, went on to state: "We emphasize that the phrase 'and all other like Perils, Losses and Misfortunes,' which words were used in the present insurance policy [as is the case herein], simply extends coverage to similar perils. Similar clauses in other insurance policies have never been interpreted to convert this coverage clause into an all-risk coverage clause." Id. at 825 (citing 11 Couch on Insurance 2d., §§ 43:3–5 (Rev. ed. 1982)). The Pacific court further held that the wording of the Inchmaree clause included in the specific perils policy, which was very similar to the Inchmaree clause in the policy at bench, "leaves no doubt that it also is intended to be an enumerated perils clause . . . ." Pacific, supra, at 826. The policy at issue here is, therefore, clearly a specific perils policy.

12

## II. *Burden of Proof*

█ The burden of proof shifts depending on whether the policy is an all-risks or specific perils policy. When a specific perils policy is involved, the burden of proof is on the insured to show that the loss incurred is covered by a specifically named peril in the policy. Darien Bank v. Travelers Indemnity Co., 654 F.2d 1015, 1019 (5th Cir. 1981); Vining v. Security Insurance Co. of New Haven, 252 So.2d 754, 756 (La. Ct. App. 1971); Pacific Dredging Co. v. Harley, 397 P.2d 819, 825–26 (Wash. 1964).

██ This requirement of the insured, under a specific perils policy, to satisfy the burden of proving that the loss was a result of a covered peril, is in accordance with the prevailing general rule in insurance law that the insured has the burden of showing coverage. See Fireman's Fund Insurance Co. v. Videfreeze Corp., 540 F.2d 1171 (3d Cir. 1976). See also 3A Corbin on Contracts, § 751 at 476 (1960). That the burden of proof under an all-risk policy is on the insurer (after the insured has shown simply that a loss has occurred) to prove that the loss is a result of a cause which is excepted under the policy is a reversal of the general rule. See MacMary Corp. v. Manufacturers Trust Ins. Co., 18 V.I. 570 (1981). As it has been decided that the policy here is a specific perils policy, plaintiffs must establish that their loss was caused by a peril for which the insurer specifically assumed liability.

██ The defendant claims that worm damage is not included as a specific peril insured against. It must first be ascertained whether or not there is coverage under the "Perils" clause of the policy, which provides protection against losses resulting from the perils of the sea. It is clear that an insurance agreement which includes a "perils of the sea" clause is not meant to cover all losses which occur upon the sea. An insurance policy provides for "risks," not "certainties." Thus, a policy protecting the insured from the perils of the sea does not insure against ordinary perils which every vessel regularly and inevitably must encounter. Wigle v. Aetna Cas. & Sur. Co., 177 F. Supp. 932 (E.D. Mich. 1959). See also Darien Bank v. Travelers Indemnity Co., supra; Vining v. Security Ins. Co. of New Haven, supra; 11 Couch on Insurance 2d, supra, § 43:87 at 67.

█ It is this Court's conclusion that damage to the ship, in this particular case, from marine borers was an ordinary consequence and was to be expected. Moreover, it has been specifically held that a worm-eaten condition of a vessel is not a loss due to the "perils of

13

the sea." Reisman v. New Hampshire Fire Ins. Co., 312 F.2d 17 (5th Cir. 1963); Vining v. Ins. Co. of New Haven, supra. See also 11 Couch on Insurance 2d, supra, § 43:111 at 80. Plaintiffs cannot, therefore, meet the burden of proving that the damage which is the subject of the instant action is covered under the "perils of the sea" clause in the policy.

In order to satisfy their burden of persuasion, then, plaintiffs must establish that their loss is insured by the so-called "Inchmaree" clause. This clause, in relevant part, states that

> the insurance also covers loss of or damage to the vessel directly caused by . . . any latent defect in the machinery or hull, . . . negligence of charterers and/or repairers, provided such charterers and/or repairers are not an assured hereunder; negligence of Masters, Officers, Crew or Pilots; provided such loss or damage has not resulted from want of due diligence by the assured, the owners or managers of the vessel, or any of them.

As it has been held in Reisman v. New Hampshire Fire Ins. Co., supra, that a worm-eaten condition of an insured boat was not a latent defect within an Inchmaree clause, plaintiffs must, in order to recover under the Inchmaree clause, establish that St. Croix Marine was a "repairer," and that in its capacity as a repairer, St. Croix Marine negligently caused the loss.

In interpreting the use of the word "repairer" in the policy, it is enlightening to consider the case of Walker v. Travelers Indemnity Co., 289 So.2d 864 (La. Ct. App. 1974), where the court held that a boat company, responsible for the upkeep and maintenance of a yacht, and with authority to do what was required to maintain the vessel in a seaworthy condition, came within the category of "repairers" as that word was used in an Inchmaree clause similar to the one presently at issue.

■ Although the defendant claims that St. Croix Marine was not employed, in this instance, as a repairer, it appears to this Court that St. Croix Marine does indeed come within the category of "repairer." In reaching this conclusion, the Court relies on the fact that St. Croix Marine is the only boatyard on St. Croix, as well as the evidence before it indicating that the plaintiffs and St. Croix Marine have had a continuing business relationship which has, in the past, included repairs. Furthermore, it is clear that plaintiffs intended that St. Croix Marine perform the necessary repair work in the instant case, and individuals from St. Croix Marine did nothing which would indicate otherwise. In fact, the people working

14

at St. Croix Marine had given plaintiffs an idea of what general repairs would be necessary and how much these repairs would cost. Thus, the Court is convinced that, during the time the boat was being damaged by Toredos, it was not only docked at St. Croix Marine, but it was also there for repairs.

Plaintiffs must also show that St. Croix Marine was negligent in failing to carry out its duty to plaintiffs. The vessel sat idly at St. Croix Marine for approximately six (6) months. During this time plaintiffs continually inquired as to when the boat would be hauled, and they continually got the same response: "soon." The boat was never hauled, and during this time it developed worm-damage. It is the Court's determination that St. Croix Marine was in fact negligent. In St. Croix Marine & Development Co. v. James Vertichio, Civil No. 1286/81, Terr. Ct., Div. St. C. (March 15, 1983), this Court rendered judgment in favor of Vertichio and against St. Croix Marine on Vertichio's counterclaim for damages resulting from St. Croix Marine's failure to perform these same promised repairs to this same vessel.

"It is . . . prerequisite to the liability of the underwriter, under either the general perils clause or the special coverage clause, that the loss be 'proximately caused' by the peril insured against and claimed under." Northwestern Mutual Life Ins. Co. v. Linard, 498 F.2d 556, 561 (2d Cir. 1974) (citing Lanasa Fruit Steamship & Importing Co. Inc. v. Universal Ins. Co., 302 U.S. 556 (1938)). Proximate cause in marine insurance matters is a "'predominate or determining' or 'real efficient' cause determination of which is, '. . . a matter of applying common sense and reasonable judgment as to the source of the losses alleged.'" Insurance Co. of North America v. John J. Bordlee Contractors, Inc., 532 F.Supp. 774, 785 (E.D. La. 1982) (citing Blaine Richard & Co. v. Marine Indem. Ins. Co. of America, 635 F.2d 1051, 1054–55 (2d Cir. 1980)). See also Lanasa Fruit Steamship & Importing Co. Inc. v. Universal Ins. Co., supra. It is clear to this Court that the negligence of St. Croix Marine, a "repairer," in failing to haul the vessel as promised, constituted the proximate cause of the damage to the boat by the marine borers. Therefore plaintiffs have met their burden of proof, as required under this "specific perils" policy, of showing that the loss incurred is covered by a specifically named peril in the policy.

Having determined that plaintiffs have met their burden of establishing that the loss comes within a specific coverage of the policy, the burden now shifts to the defendant to show that a specific

exclusion in the policy coverage applies. Insurance Co. of North America v. John J. Bordlee Contractors, Inc., 532 F.Supp. 774 (E.D. La. 1982); Carter Tug Service, Inc. v. Home Insurance Co., 345 F.Supp. 1193 (S.D. Ill. 1971).

Defendant asserts that St. Croix Marine was a "manager" of the vessel when the damage occurred, and argues that any alleged negligence of St. Croix Marine is therefore specifically within the provision in the Inchmaree clause excluding coverage for losses resulting from want of due diligence by the manager of the vessel. Defendant does not support this bald conclusion with any reasoning and, indeed, it is unsupportable. It is sufficient to state that St. Croix Marine does not come within the meaning of "manager" as used in the policy. See Chicago S.S. Lines v. United States Lloyds, Inc., 12 F.2d 733 (7th Cir.), cert. denied, 273 U.S. 698 (1926).

Defendant also claims that plaintiffs have exhibited a want of due diligence to keep the vessel seaworthy and that the policy exclusion in the Inchmaree clause which denies coverage for a loss resulting from the owner's or the assured's lack of due diligence therefore applies.

It is true that coverage is dependent on the seaworthy condition of the vessel at the outset. Walker v. Reliance Ins. Co., 340 F.Supp. 206 (E.D. Mich. 1972). The American Rule implies a warranty of seaworthiness from the moment the insurance attaches. Saskatchewan Government Ins. Office v. Spot Pack, 242 F.2d 385, 388 (5th Cir. 1957). If a vessel is unseaworthy, and as such sustains a loss, generally there is no coverage. It is the insurer's burden to prove a vessel unseaworthy. Joseph Navigation Corp. v. Chester, 411 F.Supp. 496 (S.D.N.Y. 1975), aff'd 556 F.2d 557 (2d Cir. 1976).

This implied warranty of seaworthiness imposes on the insured a duty of active diligence. King v. Liverpool and London and Globe Ins. Co., 238 N.Y.S.2d 799, 801–02 (City Ct. 1962). However, "The 'Inchmaree' clause, though referring to 'due diligence' of the owner to keep the vessel seaworthy, was not intended to restrict coverage but to broaden it by limiting warranty of seaworthiness where such unseaworthiness arises from the negligence of the master, engineer, mariners or pilots [,]" or, as in our case, repairers. King, supra, at 803–04. See also Goodman v. Fireman's Fund Ins. Co., 600 F.2d 1040 (4th Cir. 1979) (purpose of Inchmaree clause was to broaden rather than restrict, and expand rather than withdraw coverage); Allen N. Spooner & Son, Inc. v. Connecticut Fire Ins. Co., 314 F.2d 753 (2d Cir.), cert. denied, 375 U.S. 819 (1963) (same).

16

Thus, when a master, officer, crewman, repairer, pilot, etc. renders a vessel unseaworthy, the insurer is released and liability is cast upon the shipowner in cases where the insurer can prove the shipowner's breach of its duty of due diligence. But, when there is no showing that the shipowner breached such duty, and proof is lacking that the shipowner, in bad faith or neglect, allowed the vessel to sail in an unseaworthy condition, that same negligence which caused the ship to become unseaworthy will not preclude the shipowner from insurance coverage. Texaco, Inc. v. Universal Marine, Inc., 400 F.Supp. 311 (E.D. La. 1975). As was stated in Tropical Marine Prod. v. Birmingham Fire Ins. Co. of Pennsylvania, 247 F.2d 116, 122-23 (5th Cir. 1957), "Unlike so many cases, where each policy contained an *express* warranty of continuing seaworthiness and an exclusion of losses caused by unseaworthiness, a Time Hull Policy [as is the policy herein] with no warranty of continuing seaworthiness but with an Inchmaree clause does in fact underwrite unseaworthiness of many types." (Citations omitted) (emphasis added).

As stated previously, St. Croix Marine is the only shipyard on St. Croix. Plaintiffs, as they had done in the past, took their vessel to this boatyard for repairs, and were continually promised that the boat would be hauled soon. Yet the boat remained moored there for approximately six (6) months. Plaintiffs entertained thoughts of moving the vessel, under its own power, and in spite of its condition of disrepair, to a shipyard in Tortola, British Virgin Islands, where the vessel is presently hauled. But plaintiffs, to their detriment, reasonably relied on St. Croix Marine's promises to haul it the next chance they had. Such promises never came to fruition, and in the meantime the vessel sustained serious worm damage. Defendant has failed to show that plaintiffs, or any responsible boat owner, could have done anything more to see that the vessel was properly cared for. Keeping in mind the rule that "due diligence" within an Inchmaree clause of a marine insurance policy is a relative term and must be measured in light of the facts and circumstances of the particular case which brings the term into question, Founders' Ins. Co. v. Rogers, 305 F.2d 944 (9th Cir. 1962), it is this Court's determination that defendant has been unable to establish that plaintiffs breached their implied warranty of seaworthiness because it has failed to show that plaintiffs exhibited a want of due diligence. Defendant has not, therefore, met its burden of proving that a specific exclusion in the insurance coverage applies.

17

III. *Coverage*

Lastly, the defendant has cited numerous cases in support of its proposition that there is no coverage under the policy since the Inchmaree clause has consistently been interpreted only to cover "operational" negligence and *not* "shoreside" failures. Defendant's position at first appears persuasive, but upon close evaluation of the cases cited, they are, in one way or another, distinguishable from the case at bench on this issue. The defendant has cited to the Court the following cases: Allen N. Spooner & Son, Inc. v. Connecticut Fire Ins. Co., 314 F.2d 753 (2d Cir. 1963); Baggaley v. Aetna Ins. Co., 111 F.2d 134 (7th Cir. 1940); Walker v. Reliance Ins. Co., 340 F.Supp. 206 (E.D. Mich. 1972); Yacht Buccaneer, 1940 Am. Mar. Cas. 1397 (arbitration, Chicago, 1940); King v. Liverpool and London and Globe Ins. Co., 238 N.Y.S.2d 799 (City Ct. 1962); and Read v. Agricultural Ins. Co., 263 N.W. 632 (Wis. 1935), all recognizing the different treatment to be given to "preparational" and "seagoing" carelessness.

These cases do state the rule that there is a distinction between negligence of persons acting on the owner's behalf in conditioning a boat, and the negligence of an officer in handling the vessel at sea, and that if the conditioning activities result in launching an unseaworthy vessel there is no coverage, but the Inchmaree clause applies to negligence in the discharge of some professional duty while handling the vessel during a voyage. However, as stated, each of these cases in its own way is distinguishable on this issue from the present case. For example, the Inchmaree clause in Allen N. Spooner, supra, did not make any reference to "repairers." It was limited to "negligence of master, mariners, engineers or pilots . . . ." Furthermore, the court there held that the loss was the result of operational negligence of an individual while he was acting as master, and concluded that

> the Inchmaree clause was designed to insure against seagoing or operational negligence of the master (whether or not he is also the charterer or owner), and to exclude from coverage damage due to the *shoreside failure of the shipowner's managerial staff* properly to prepare or equip the vessel for the voyage or service she is about to perform.

Allen N. Spooner, supra, at 758 (emphasis added). The policy in the present case specifically refers to "repairers." In addition, it has been held earlier, see page 16, supra, that St. Croix Marine was not a manager of plaintiffs' vessel. For these grounds, the reasoning in

18

Allen N. Spooner on the issue of shoreside versus seagoing negligence is distinguishable.

The case of Baggaley v. Aetna Ins. Co., supra, involved an engineer hired to work on the vessels engines, and presented the issue of whether or not this engineer was acting as an "engineer" within the meaning of the Inchmaree clause when he failed to properly "lay up" the boat resulting in freezing damage. The Baggaley court stated:

> But we are of the opinion that in construing the word "engineers" we must consider the special type of policy involved and must not isolate the term from its context. The particular peril insured against is the negligence of master, mariners, engineers, and pilots . . . . In view of the context the term "engineers" obviously refers to persons engaged in seafaring activities, and the peril insured against is the negligence of masters, mariners, engineers or pilots in their respective capacities as seamen employees. *It would not follow from what we are saying that one who is in fact acting as a boat engineer would cease to be such if he were to engage in the work performed by Mattson [the engineer], if such work could be said to be reasonably related to the normal functions of a boat engineer. But the converse is not true, that one who is engaged to perform purely mechanical work on the engines of a boat becomes an engineer within the meaning of the policy while performing such work. For example, if at the end of the season . . . Mattson, while still acting in the capacity of the yacht's engineer, and as incident to his duties as such engineer, had been negligent in laying up the boat for the winter and as a result had caused damage thereto, there would be substantial ground for contending that any damage resulting from his negligence would come within the protection of the policy.*

Baggaley, supra, at 135–36 (emphasis added). Baggaley is distinguishable on this issue in that the instant case involves an Inchmaree clause protecting against negligence of *repairers*, and St. Croix Marine was clearly a repairer and was clearly acting in its capacity as a repairer when it caused the damage, and the work which should have been done but was not done (i.e. hauling the boat) was reasonably related to the normal functions of a boat repairer.

The Yacht Buccaneer case, supra, is distinguishable for a similar reason. There, the arbitrator held that the negligence of the master was not covered under the Inchmaree clause because the negligent actions were not connected with the actor's duties as a master, nor

19

were they actions ordinarily required of a yacht master or bearing some reasonable relation thereto. The opinion also stated that the master was acting solely as the agent for the yacht's owner.

The cases of Walker v. Reliance Ins. Co., supra, and Read v. Agricultural Ins. Co., supra, are very similar to each other, both holding that a ship owner cannot delegate to a boat repair company the responsibility of meeting the condition in a marine insurance policy that the vessel be in seaworthy shape. Both are distinguishable, however, since neither policy provided specifically for negligence of "repairers." Nor did the policy in King v. Liverpool and London and Globe Ins. Co. have such a provision.

In contrast to the rule and the decisions relied on previously by defendant is the case of Walker v. Travelers Indem. Co., 289 So.2d 864 (La. Ct. App. 1974). In this case, the Inchmaree clause specifically covered negligence of "repairers." A vessel sank while at its moorings at a marina as a result of water entering through a hole in the bottom of the muffler. A boat company was responsible for the upkeep and maintenance of the yacht. The court held that this boat company was in the category of "repairer" under the Inchmaree clause and, as such, its failure to carry out its duty to the owner was negligent and was specifically covered by the policy.

 In light of the foregoing, it is far from clear that the defendant insurance company, due to the distinction between "seagoing" and "shoreside" negligence, is free from liability.

> It is a general rule of construction that where the language of a policy of insurance may reasonably be construed in more than one way the meaning beneficial to the insured is to be given effect by resolving fair doubts against the insurer who chose the language which created them. That is particularly applicable to a time policy of marine insurance.

Allen N. Spooner & Son, Inc. v. Connecticut Fire Ins. Co., supra at 755 (quoting Henjes v. Aetna Ins. Co., 132 F.2d 715, 719 (2d Cir.), cert. denied, 319 U.S. 760 (1943)) (citations omitted). Thus, the policy must be read so as to provide coverage in this instance.

IV. *Conclusion*

The plaintiffs have met their burden under the "specific perils" marine insurance policy at issue here to show that the loss they suffered was caused by a peril for which the policy specifically provides, namely, negligence of a repairer. Defendant, on the other hand, has failed to establish that the loss suffered is excluded by any

provision in the policy. The damage is not the proximate result of any want of due diligence by the owners or managers, nor has defendant convinced this Court that the distinction drawn by the courts between "seagoing" and "shoreside" failures or carelessness effectively precludes recovery by plaintiffs for the loss herein incurred. Therefore, judgment is to be entered in favor of plaintiffs shipowners and against defendant insurer in the amount of Twenty-Five Thousand Dollars ($25,000.00).

## JUDGMENT

In accordance with the accompanying Memorandum Opinion, it is hereby

ORDERED that judgment be entered in favor of plaintiffs and against defendant in the amount of Twenty-Five Thousand Dollars ($25,000.00) plus costs and attorney's fees.