**Walter M. TATUM, Appellee,**

v.

**FRISCO TRANSPORTATION COMPANY, a Delaware Corporation, Appellant.**

**No. 79–1687.**

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1980.

Decided July 10, 1980.

Rehearing Denied July 30, 1980.

Dennis T. Rathmann (argued), St. Louis, Mo., Donald E. Engle, St. Louis, Mo., and C. Wallace Walter, Mann, Walter, Burkart, Weathers & Walter, Springfield, Mo., on brief, for appellant.

Ransom A. Ellis, Jr. (argued), Paul W. King, and James D. Conkright, Springfield, Mo., on brief, for appellee.

Before LAY, Chief Judge, HENLEY, Circuit Judge, and HANSON, Senior District Judge.*

HENLEY, Circuit Judge.

Walter M. Tatum brought this action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, in the United States District Court for the Western District of Missouri, The Honorable William R. Collinson presiding. Plaintiff claimed that his former employer, Frisco Transportation Company (Company), had breached a collective bargaining agreement and that his Union, the General Drivers and Helpers Local Union No. 823, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Teamsters Local No. 823 or Union), had breached its duty of fair representation. The district court in a trial by jury found for the plaintiff and entered judgment against the Union in the amount of $352.00 and judgment against the Company in the amount of $20,000.00. The court further ordered the Company to reinstate the plaintiff to his former position. We affirm.

Plaintiff Walter M. Tatum was an employee of the Frisco Transportation Company, a wholly owned subsidiary of the Frisco Railroad and a common carrier of freight in and around Joplin, Missouri. At all relevant times the plaintiff was represented by the Teamsters Local No. 823. During Tatum's employment with the Company, a collective bargaining agreement existed between the Company and Teamsters Local No. 823 known as the National Master Freight Agreement and Central States Area Local Cartage Supplement Agreement, effective from July 1, 1973 through March 31, 1976. This agreement established the working conditions of plaintiff's employment with the Company.

Under the terms of the collective bargaining agreement, the Company classified its employees into three different groups.

First, there were "regular" or "seniority" employees. These employees had acquired this status by working either thirty days in a ninety day period or fifty-five days in a twelve month period. "Regular" employees were guaranteed a forty hour work week, recall rights, and certain fringe benefits such as paid vacations and holidays, and health, welfare and pension benefits.

Second, there were "ten per cent" employees. These employees were entitled to the same fringe benefits as "regular" employees except that "ten per cent" men worked on a day-to-day basis and were not guaranteed a forty hour work week. The collective bargaining agreement allowed one "ten per cent" employee for every ten "regular" employees.

Finally, there were the "casual" employees, sometimes referred to as "probationary", "new" or "part-time" employees. These employees served generally as replacements for absentees or vacationing employees and were called on the basis of the availability of work, their past job performance and other factors. The "casual" employees, however, had no obligation or duty to work and likewise the Company had no obligation to call the "casual" employees. Moreover, "casual" employees could also work part-time for other trucking companies in the area.

Although the "casual" employees received none of the benefits associated with seniority status, "casual" employees could attain seniority by working thirty days in a ninety day period or fifty-five days in a twelve month period. Furthermore, while the Company could discharge "casual" employ-

---

* The Honorable William C. Hanson, United States Senior District Judge, Southern District of Iowa, sitting by designation.

ees during the probationary period, the Company could not discharge or discipline "casual" employees for the purpose of evading the collective bargaining agreement. Article 3, Section 2 of the agreement provides:

A new employee shall work under the provisions of this Agreement but shall be employed only on a thirty-day trial basis, during which period he may be discharged without further recourse; provided, however, that the employer may not discharge or discipline for the purpose of evading this Agreement or discriminating against Union members. After thirty days the employee shall be placed on the regular seniority list.

After his previous employer, Be-Mac Transportation Company, went out of business, Tatum in July, 1974 began working for the Company. There is some evidence which tends to indicate that the Company hired Tatum on the condition that Tatum bring some of Be-Mac's business with him. Although Tatum was told that he would probably receive steady employment and was never told that he would merely be a "casual" employee, it could be assumed that Tatum, who had worked for twenty years for trucking companies with similar arrangements, understood that he was hired as a "casual" employee.

Tatum worked fairly steadily from July 18, 1974 until September 16, 1974, acquiring twenty-six days of employment. After September 16, however, Tatum was no longer called back to work. The evidence tends to show that Tatum, as well as other "casual" employees who had worked close to the thirty day limit, were cut off from work so as to prevent them from achieving seniority. In fact, there was evidence that hiring managers were specifically instructed that a "casual" was not to be worked to the thirty day limit where he could gain seniority.

Following his discharge, Tatum contacted the president of Teamsters Local No. 823, William Kitts, and the secretary-treasurer of Teamsters Local No. 823, R. S. Krutsinger. Krutsinger helped Tatum file a grievance but informed Tatum that the grievance was "borderline" and "marginal." The Company answered the grievance by stating that Tatum did not meet the minimum requirements for employment. Krutsinger, however, never inquired as to what minimum requirements Tatum might lack, nor attempted to verify Tatum's claim that the Company's hiring managers were instructed that a "casual" was not to be worked to the thirty day limit where he could gain seniority. Prior to the grievance hearing, Krutsinger failed to take statements from Tatum or other "casual" employees regarding this employment practice.

Tatum's grievance was heard before the Missouri-Kansas Drivers Council (Drivers Council). The Teamsters Local No. 823's case was presented by Krutsinger, and Tatum did not attend the hearing nor was he informed of the hearing. During the course of the hearing, no witnesses were called on Tatum's behalf and Krutsinger did not present any statements or affidavits. Moreover, Krutsinger never mentioned the statement by the Company's hiring manager that Tatum was not receiving work because of the Company policy of preventing "casuals" from obtaining seniority, nor did he argue that Article 3, Section 2 of the agreement prohibited using "casuals" for the purpose of evading the agreement. Not surprisingly, the Drivers Council denied the claim of Teamsters Local No. 823. As indicated, Tatum then brought suit in district court claiming that the Union had breached its duty of fair and adequate representation and the Company had discharged him to prevent him from acquiring seniority, thereby evading the bargaining agreement.

On appeal the Company first argues that the district court erred in denying its motion for summary judgment because the decision of the Drivers Council against Tatum was final and binding on both parties and a court cannot upset the Board's arbitration award so long as it draws its essence from the collective bargaining agreement.

■ The argument has no merit. In *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231

(1976), the Supreme Court held that an employer who had been denied reinstatement by an arbitration committee could still obtain judicial review of his wrongful discharge if there was evidence that the arbitral process had been seriously undermined by the union's failure to represent him. We have entertained such suits in this circuit. *See, e. g., Smith v. Hussmann Refrigerator Co. and Local 13889, United Steelworkers of America,* 619 F.2d 1229 (8th Cir. 1980) (*en banc*).

 In the present case there is clear support for the proposition that the Union breached its duty of fair representation and tainted the arbitration proceedings. As previously noted, R. S. Krutsinger, the Union representative who handled the plaintiff's case, did not call any witnesses, present any affidavits, nor inform plaintiff of the time of the hearings. He also ignored many obvious sources of proof which could have shown that Tatum was discharged to prevent him from obtaining seniority in violation of Article 3, Section 2 of the collective bargaining agreement. We believe that these omissions seriously prejudiced the injured employee's rights, *see, e. g., Minnis v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW,* 531 F.2d 850 (8th Cir. 1975), and subverted the arbitral process. And we conclude that the Company is not protected from relitigation by the finality provision of the collective bargaining agreement and the arbitrator's decision is reviewable on the merits. *Hines v. Anchor Motor Freight, Inc., supra,* 424 U.S. at 567, 96 S.Ct. at 1057.

The Company claims that the district court erred in denying the Union's motion to amend its answer in which it would have set forth an allegation that the plaintiff failed to exhaust internal union procedures.

 We do not find that the trial court abused its discretion in denying leave to amend. We first note that the Union filed this motion to amend its answer two and one-half years after Tatum's complaint and only twenty-one days prior to trial. The motion was heard the morning of the trial and the court was advised that if the amendment was permitted Tatum would need to pursue further discovery. It is established that a trial court does not abuse its discretion in denying leave to amend where, as here, the amendment will result in undue delay and prejudice. *Mercantile Trust Co. Nat'l Ass'n v. Inland Marine Products Corp.,* 542 F.2d 1010, 1013 (8th Cir. 1976); *In re Cessna Distributorship Antitrust Litigation,* 532 F.2d 64, 68 (8th Cir. 1976), and the moving party had sufficient opportunity to amend its answer, but, without good reason, has failed to do so. *Doe v. McMillan,* 566 F.2d 713 (D.C. Cir. 1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 59 (1978); *Frank Adam Electric Co. v. Westinghouse Electric & Mfg. Co.,* 146 F.2d 165 (8th Cir. 1945). *See generally* 3 J. Moore, Moore's Federal Practice, § 15.08(4).

 Moreover, we observe that it was the Union that filed the motion to amend. Since the Company was not a party to the motion, it may not, on its own, be heard to complain of the district court's determination of this issue. *United States v. Burgreen,* 591 F.2d 291, 298–99 (5th Cir. 1979).

The Company next argues that as a matter of law it had no obligation under the agreement to continue the employment of the plaintiff or other "casual" employees so that they could gain seniority and that this issue was erroneously submitted to the jury.

 We find this argument unavailing here. While it is undoubtedly true that the Company had no obligation to continue providing work for "casual" employees, it is also true that the Company was not allowed to discharge a "casual" employee for the purpose of evading the agreement. The question whether the Company in fact evaded the agreement by discharging Tatum for the purpose of preventing him from obtaining seniority is, of course, one of fact which was properly submitted to the jury under appropriate instructions. After review of the record, we believe the jury was warranted in finding a breach of the agreement.

The Company additionally claims that the district court erred in ordering it to reinstate the plaintiff to his former position with an effective seniority date of September 21, 1974. The Company argues that an order of reinstatement is inappropriate because the plaintiff obtained equivalent employment prior to judgment and there had been a five year delay since plaintiff's discharge.

We are unpersuaded by this contention. It is established that a court has discretion to award equitable relief by way of reinstatement. *Butler v. Local Union 823, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 514 F.2d 442, 455 (8th Cir.), cert. denied, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975). *See also De Arroyo v. Sindicato de Trabajadores Packinghouse, AFL–CIO*, 425 F.2d 281, 290–92 (1st Cir. 1970). Where, as here, the question of future loss has not been presented to the jury and the employer has established no legitimate and substantial business justification showing that reinstatement is inappropriate, we cannot hold that the district court abused its discretion in ordering reinstatement. *Cf. NLRB v. International Van Lines*, 409 U.S. 48, 93 S.Ct. 74, 34 L.Ed.2d 201 (1972); *Dayton Tire & Rubber Co. v. NLRB*, 591 F.2d 566 (10th Cir. 1979).

Finally, we note that the Company raises numerous objections to the trial court's jury instructions and also argues that the district court erred in refusing to give certain proposed jury instructions. We have carefully studied these various contentions and find them without merit.

The judgment of the district court is in all things affirmed.