**INSURANCE COMPANY OF NORTH AMERICA et al.**

v.

**JOHN J. BORDLEE CONTRACTORS, INC.**

Civ. A. No. 80–754.

United States District Court, E. D. Louisiana.

Feb. 11, 1981.

Donald Hoffman, New Orleans, La., for INA and Allstate.

Gerard Gelpi, New Orleans, La., for Bordlee Contractors.

CHARLES SCHWARTZ, Jr., District Judge.

Resolution of these cross-motions for summary judgment turns upon our interpretation of a clause contained in a policy of marine hull insurance issued by plaintiffs to defendant. Plaintiffs, Insurance Company of North America and Allstate Insurance Company (INA and Allstate) contend that the clause in question is an express warranty of seaworthiness which was breached by the insured thereby voiding the policy. Defendant-insured, John J. Bordlee Contractors, Inc. (Bordlee), takes the position that the clause is merely an exclusion or a limitation upon coverage which, if violated, must be found to constitute a proximate cause of the loss in order to vitiate coverage for damages sustained as the result thereof. Bordlee further contends that INA and Allstate are estopped by their actions from denying coverage under the policy. For the reasons hereinafter set out we find that the disputed clause is not an express warranty. Accordingly, the motion of plaintiffs for summary judgment should be and it is hereby DENIED. The motion of defendant is GRANTED to the extent that we rule that the clause is an exclusion and DENIED in all other respects.

The facts of this matter are largely undisputed. On August 28, 1979, INA and Allstate issued Policy No. AMW 1273 to Bordlee which policy afforded hull coverage to the steel Diesel pushboat M/V MR. PETE. The policy, at lines 132–134, contains the following language:

The Underwriters shall not be liable for any loss, damage or expense arising out of the failure of the Assured to exercise due diligence to maintain the Vessel in a seaworthy condition after attachment of this policy; the foregoing however, not to be deemed a waiver of any warranty of seaworthiness implied by law.

On December 19, 1979, the tow of the MR. PETE came into collision with the M/V PINA at approximately Mile 101 of the Mississippi River. At the time of the collision the MR. PETE was under the control of Charles Newell, an unlicensed pilot. The only other person aboard the MR. PETE was deckhand Barry Poyadou, also unlicensed by the U.S. Coast Guard. Therefore, at the time of collision, the MR. PETE was in violation of 46 U.S.C. § 405 which provides:

An uninspected towing vessel in order to insure safe navigation shall, while underway, be under the actual direction and control of a person licensed by the Secretary to operate in the particular geographic area and by type of vessel under regulations prescribed by him.

At the time of the casualty Bordlee had a total of three captains on rotation for the MR. PETE. Of the three, only Kenneth Pichoff possessed a Coast Guard license. The captains operated on a rotation schedule whereby each captain would work two weeks on and one week off the vessel. This created a situation in which one out of every three weeks—when Kenneth Pichoff was off—the MR. PETE was under the control of two unlicensed captains. Even when Pichoff was aboard, there were times when he was off watch and out of the wheelhouse, and at such times the vessel was under the direction and control of unlicensed personnel.

There is a factual dispute as to whether or not John J. Bordlee, Sr., who operated the MR. PETE, knew that his rotation schedule would result at times in his vessel being under the control of unlicensed personnel. There is also dispute as to whether or not the control of the vessel by unlicensed personnel provided a proximate cause of the collision on December 19, 1979.

There is no legal dispute with regard to the fact that, if the clause at issue is an express warranty of seaworthiness which was breached, the policy is void, there being no necessity that the unseaworthy condition provide a proximate cause of the accident. *Aguirre v. Citizens Casualty Company of New York*, 441 F.2d 141, 143 (5th Cir. 1971).

INA and Allstate argue that the policy provision, although it does not contain the word "warrant," was an express warranty; that the statutory violation rendered the crew inadequate and the vessel unseaworthy; and that the policy is therefore void. In support of their contention that the clause is an express warranty they argue that the specific retention of all implied warranties ("the foregoing, however, not to be deemed a waiver of any warranty of seaworthiness implied at law") by implication renders the clause express. We disagree. In the Court's opinion the clause is not a warranty but an exclusion which purports to deny coverage in situations wherein there has been a breach of the continuing negative warranty of seaworthiness implied by law. The retention of warranties implied by law is supportive of the intent of the exclusion.

Examination of the language of the policy provision leaves us with the clear impression that it is not a warranty. We do not reach this conclusion merely by reason of the absence of the words "warrant" or "warranty," as those words are not required if the test of an express warranty is otherwise met.

"Any fact whatever may be made the subject of an 'express warranty'—that is the initial or continued validity of the policy may be made conditional on the existence of any state of facts. Such a warranty, to be effective, must somehow be expressed in the actual policy, but the words 'warrant' or 'warranty' need not be used. Whether a given sentence or phrase in a policy is to be given the effect of a warranty must therefore be referred to the 'intention of the parties.' Generally, *any assertion of fact in the policy*, whether in the main body or on the margins, is likely to be treated as a warranty of the fact asserted. Once a warranty is spelled out, the fact must be and remain exactly in conformity with the warranty or the policy is voided." Gilmore and Black, *The Law of Admiralty* (2nd Ed.) § 2–7, p. 67. (Emphasis supplied.)

Review of clauses deemed to be express warranties (*see, Saskatchewan Government Insurance Office v. Spot Pack*, 242 F.2d 385, 388 (5th Cir. 1957)) in *Continental Insurance Company of City of New York v. Patton-Tully Transportation Co.*, 212 F.2d 543 (5th Cir. 1954) and *Ideal Cement Co. v. Home Insurance Co.*, 210 F.2d 937 (5th Cir. 1954), as well as that contained in the policy at issue in *Aguirre, supra*, reveals that in each the assured does in fact make a positive statement that it shall provide or maintain a seaworthy condition.[1] Comparison to the language in the instant case reveals no positive assertion of a fact or a condition by the insured Bordlee. The clause is, on the contrary, a negative statement to the effect that the insurer shall not be liable under certain conditions. It is an exclusion, a limitation on the coverage undertaken by the underwriters. It is not a warranty.

It is further our opinion that the policy attempts to expressly state as an exclusion the "negative, modified, warranty" implied

---

1. "Seaworthiness. Warranted by the assured that the vessel hereby insured shall be in a seaworthy condition at the time of attachment of this insurance and shall be maintained in a seaworthy condition at all times." *Continental Insurance Company v. Patton-Tully Transportation Company, supra*, at 544.

"Warranted by the insured that the said vessel shall at all times during the continuance of this policy, be tight and well found in anchors, cable, rigging, tackle and apparel, as is usual and customary; also, in all other things and means necessary and proper for safe navigation, according to usage and custom." *Ideal Cement Company v. Home Insurance Company, supra*, at 936.

". . . warranted that at the inception of this policy the vessel shall be in a seaworthy condition and, thereafter, during the currency of the policy, the assured shall exercise due diligence to keep the vessel seaworthy, and in all respects fit, tight, and properly manned, equipped and supplied." *Aguirre v. Citizens Casualty Company of New York, supra*, at 143.

in American hull policies and explained by the Court in *Saskatchewan Government Insurance Office v. Spot Pack, supra.*

The English Rule is clear that in a Time Hull policy such as this one, there is no " * * * warranty that the vessel at any particular time shall have been seaworthy * * * " but "if, however, through the personal misconduct of the owner, the ship be sent to sea in an unseaworthy state, he cannot recover for a loss brought about by such wilful act or default." 2 Arnould, Marine Insurance (13th Ed. 1950), § 697, pp. 637–638.

But the American Rule, in a rare departure from a determined course of parallel uniformity, *Queen Ins. Co. of America v. Globe & Rutgers Fire Ins. Co.*, 263 U.S. 487, 44 S.Ct. 175, 68 L.Ed. 402, implies for a time policy, as does the English Rule as of the commencement of the voyage for voyage policies, 2 Arnould, op. cit. supra, §§ 691, 695, a warranty of seaworthiness as of the very moment of attachment of the insurance. And, unlike the English Rule which limits the warranty to the commencement of the voyage, the American Rule takes it somewhat further to extend, in point of time, a sort of negative, modified warranty. It is not that the vessel shall continue absolutely to be kept in a seaworthy condition. And, unlike a breach of a warranty of continuing seaworthiness, express or implied, which voids the policy altogether, the consequence of a violation of this "negative" burden is merely a denial of liability for loss or damage caused proximately by such unseaworthiness. *Saskatchewan Government Insurance Office v. Spot Pack, supra,* at p. 388.

*See also, Tropical Marine Products v. Birmingham Fire Insurance Company of Pennsylvania,* 247 F.2d 116, 119 (5th Cir. 1957), *cert. den'd* 355 U.S. 903, 78 S.Ct. 331, 2 L.Ed.2d 260 (1957); *Gulfstream Cargo Ltd. v. Reliance Insurance Company,* 409 F.2d 974, 983 (5th Cir. 1969); *Lemar Towing, Inc. v. Fireman's Fund Insurance Company,* 352 F.Supp. 652, 660 (E.D.La.1972) *aff'd* 471 F.2d 609 (5th Cir. 1973), *cert. den'd* 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973).

The policy provision before us specifically exempts the insurer from liability resulting from the failure of the insured to exercise due diligence to maintain the vessel in seaworthy condition after the attachment of the policy. It in effect tracks the language of judicial statements of the continuing warranty implied at law. In our opinion the inclusion of the non-waiver of any implied warranty in the clause at issue, rather than suggesting that the provision is an express warranty, merely seeks to retain for the insurer the benefit of any implied warranty in addition to the exclusion.

We hold that, like the implied negative warranty, the exclusion in the instant case will support a denial of liability in the event that the loss or damage is caused proximately by the unseaworthy condition. In this case we need not at this time reach the issue of whether or not the statutory violation by the MR. PETE rendered that vessel unseaworthy because, even assuming that it did, there remain factual disputes as to the proximate causes of the collision which must await trial on the merits for resolution. Likewise at this time we feel that the existence of factual questions precludes our determination as to whether or not the insurers, by their actions, are estopped from denying coverage. In the event that, after trial, it appears that the exclusion is applicable, we will then address the issue of possible waiver or estoppel by the insurers.