**L & L MARINE SERVICE, INC., Appellant,**

v.

**The INSURANCE COMPANY OF NORTH AMERICA, Appellee.**

No. 85–1390.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1986.

Decided July 16, 1986.

Rehearing and Rehearing En Banc Denied Aug. 27, 1986.

Michael D. O'Keefe, St. Louis, Mo., for appellant.

Douglas K. Rush, St. Louis, Mo., for appellee.

Before McMILLIAN and JOHN R. GIB-SON, Circuit Judges, and MURPHY,* District Judge.

JOHN R. GIBSON, Circuit Judge.

The capsizing of a barge with the unimaginative name P-2, resulting in its total loss, gives rise to this action by its owner and operator, L & L Marine Service, against its marine insurer, the Insurance Company of North America. The district court[1] dismissed all of L & L's claims except its claim under the time hull provision of the insurance policy, on which the jury returned a verdict in favor of INA. L & L argues on appeal that the district court erroneously instructed the jury that an exclusionary provision in the time hull policy absolved INA of liability for the loss if it were shown that L & L negligently permitted the barge to go to sea in an unseaworthy state. L & L asserts that the jury should have been instructed that INA could escape liability only if it were proved that L & L knowingly permitted the barge to go to sea in an unseaworthy state. L & L also argues on appeal that the district court erred in granting summary judgment on its claim for slander, and erred in not permitting it to amend its pleadings to show that INA waived certain conditions to indemnification of wreck removal expenses under the protection & indemnification provisions of the insurance policy, and thus avoid a directed verdict on that claim. We affirm the judgment of the district court.

In 1970, L & L purchased the P-2, an unmanned, all-welded box-style steel hopper barge measuring 190 feet long, 35 feet wide and 12 feet deep. The barge had a 3/8" hull, and contained fourteen buoyancy wing tanks, six on each side, and one each at the bow and stern. L & L restored the barge, built in 1957, and had it certified for use in ocean shipping. In 1981 INA issued a marine insurance policy on the P-2 to L & L. The policy contained a time hull coverage provision, with the following exclusion:

> This Company [INA] shall not be liable for any loss, damage, or expense arising out of the failure of the Assured [L & L] to exercise due diligence to maintain the Vessel in a seaworthy condition after attachment of this policy; the foregoing, however, not to be deemed a waiver of any warranty of seaworthiness implied at law.

In December 1982, the P-2 was towed to the Morton Salt facility on Weeks Island, Louisiana to carry a shipment of salt. L & L employees supervising the loading discovered a fractured weld in the hull, which they stopped by driving a wooden wedge into the fracture. The next day the barge was towed to L & L's facility in Pensacola, Florida. Jack Oldani, L & L's Vice President for Engineering and Maintenance, inspected the P-2 and had welds placed over the temporary repairs to the bow rake compartment made at Weeks Island, a small crack discovered in the number one starboard wing tank, and a small hole in the hull of the port wing tank, which had caused flooding on the journey. Oldani inspected the other tanks and discovered no other holes or water.

The following day the P-2 was towed to sea. Two days later the P-2 was observed

---

1. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

listing badly. The next day, approximately 50 miles from Tampa, the barge capsized. After it was nudged onto a nearby beach, the barge was inspected by a representative of L & L and a number of marine surveyors hired by INA. The inspection revealed a one inch rust hole in the number one port wing tank; a one-half inch rust hole in the number three starboard wing tank; and a one-quarter inch rust hole in the number four starboard wing tank. All three holes were new and went completely through the hull of the barge. One of the marine surveyors was able to drive several holes in the hull simply by tapping it with a one pound surveyor's hammer. This surveyor also testified that it would take ten to fifteen years for the hull to deteriorate to this condition.

INA denied L & L's claim for total loss of the P–2, citing the provision in the time hull policy excluding liability for losses due to L & L's failure to exercise due diligence to keep the barge seaworthy. After INA informed L & L that it intended to decline coverage, a conference call was arranged between officials of INA, in Chicago, and officials of L & L, in St. Louis. L & L's Insurance Broker and Insurance Manager argued that L & L had properly maintained the P–2 and had done all it could to assure seaworthiness of the barge. During the discussion Regis Menke, Manager of Marine Claims for INA, disclaiming any accusations, suggested a scenario in which L & L, facing financial problems, towed the barge to sea and let it sink to recover the full value of the policy, which was substantially more than the market value of the barge.

L & L then initiated this action asserting claims for hull loss and indemnification for wreck removal expenses under the time hull and protection and indemnity (P & I) provisions of the policy, respectively; L & L also sought damages for bad faith and vexatious refusal to pay and for slander. The district court eventually dismissed L & L's bad faith claim, and directed a verdict on its claims for vexatious refusal to pay and for indemnification under the P & I policy; the court also disposed of L & L's slander charge on a motion for summary judgment. The case was submitted to the jury solely on L & L's claim under the hull policy. The jury returned a verdict for INA, and this appeal followed.

## I.

INA's sole defense to L & L's claim under the hull policy was based on the exclusion requiring L & L to exercise due diligence to maintain the barge in seaworthy condition. The district court instructed the jury that "due diligence as used in these instructions means the exercise of care to be expected of a reasonably prudent vessel owner."[2] L & L argues that the district court erred in instructing the jury that its mere negligence would absolve INA of its duty to cover the loss. L & L argues that the exclusionary clause was intended as nothing more than a statement of the implied warranty of seaworthiness read into all American marine insurance time policies, under which, L & L maintains, an insurer may deny coverage only if the jury finds that the insured had actual knowledge that the vessel was unseaworthy.[3] We conclude that the instruction is not erroneous.

---

2. The relevant portion of the district court instructions reads:
    Your verdict must be for plaintiff unless you believe: That plaintiff failed to exercise *due diligence* to maintain the vessel in a seaworthy condition after July 1, 1982, the date of the attachment of the policy and that such failure caused the vessel P–2 to capsize and subsequently be sunk.
    Your verdict must be for defendant if you believe that plaintiff failed to exercise *due diligence* to maintain the P–2 barge in a seaworthy condition at the start of the voyage

from Pensacola, Florida on December 13, 1982, and that such failure caused the vessel P–2 to capsize and subsequently to be sunk.
    \*    \*    \*    \*    \*    \*
    The term *"due diligence" as used in these instructions means the exercise of care to be expected of a reasonably prudent vessel owner.* Transcript IV at 89–90 (emphasis added).

3. L & L's proposed instruction read in pertinent part: "[T]he Defendant must show that Plaintiff from bad faith and neglect knowingly permitted the vessel to break ground."

We agree with the parties that the exclusion, which taken at face value sets a negligence standard, should be interpreted in light of the historical development of the implied warranty of seaworthiness. *Cf. Insurance Co. of North America v. Bordlee*, 507 F.Supp. 845, 847–48 (E.D.La.1981) (identical exclusion provision in time hull policy is merely restatement of implied warranty of seaworthiness), *aff'd*, 733 F.2d 1161 (5th Cir.1984).

American maritime law implies into every time hull insurance policy a warranty of seaworthiness. *See, e.g., Insurance Co. of North America v. Board of Commissioners*, 733 F.2d 1161, 1165 (5th Cir.1984); *McAllister Lighterage Line v. Insurance Co. of North America*, 244 F.2d 867, 870–71 (2d Cir.1957); *Saskatchewan Government Insurance Office v. Spot Pack, Inc.*, 242 F.2d 385, 388 (5th Cir.1957); *Henjes v. Aetna Insurance Co.*, 132 F.2d 715, 719 (2d Cir.1943); *Texaco, Inc. v. Universal Marine, Inc.*, 400 F.Supp. 311, 323 (E.D.La. 1975); *Nuebros Corp. v. Northwestern National Insurance Co.*, 359 F.Supp. 310, 315–16 (E.D.N.Y.1972). *But see Gregoire v. Underwriters at Lloyd's, Combined Co.*, 559 F.Supp. 596, 598 (D.Alaska 1982) (rejecting American Rule, arguing cases actually state English Rule).[4] The American Rule, as it is so called, implies into a time policy two related warranties. The first is an absolute warranty by the assured that a vessel is seaworthy at the time that the insurance policy attaches. The second, which relates to defects of seaworthiness which arise after commencement of the

risk, is a "negative, modified warranty, * * that the Owner, from bad faith or neglect, will not knowingly permit the vessel to break ground in an unseaworthy condition." *Spot Pack*, 242 F.2d at 388. Breach of this "negative" warranty results in a denial of liability only for loss or damage proximately caused by the unseaworthy condition. *Id.* It is this negative warranty with which we are concerned today.

The confusion in the standard by which a breach is defined arises from the unfortunate language in the crucial sentence in the Fifth Circuit's modern statement of the warranty in *Spot Pack*, that the negative warranty requires that the owner "from bad faith or neglect, will not knowingly permit" the vessel to sail in an unseaworthy condition. Thus are juxtaposed two, and arguably three different standards of intent. The Fifth Circuit, it appears, has held that the implied warranty adopts the more stringent "knowing" standard. *See Tropical Marine Products v. Birmingham Fire Insurance Co.*, 247 F.2d 116 (5th Cir. 1957), *cert. denied*, 355 U.S. 903 (1957); *Spot Pack*, 242 F.2d at 389–90.[5]

We believe, however, that the district court did not err in charging the jury that the policy exclusion requires only a finding of negligence. In *Union Insurance Co. v. Smith*, 124 U.S. 405, 8 S.Ct. 534, 31 L.Ed. 497 (1888), the Court upheld a jury charge which permitted an insurer to deny coverage under a time policy if it were proven that the master of a tug, which had developed a defect which ren-

---

**4.** The English Rule for time policies is well settled:

> In a time policy there is no implied warranty that the ship shall be seaworthy at any state of the adventure, but where, with the privity of the assured, the ship is sent to sea in an unseaworthy state, the insurer is not liable for any loss attributable to unseaworthiness.

Marine Insurance Act of 1906, 6 Edw. 7 c. 41, § 39(5). *See also Spot Pack*, 242 F.2d at 388; *Gregoire*, 559 F.Supp. at 598. The shipowner is only liable if he had "knowledge not only of the facts constituting the unseaworthiness, but also knowledge that those facts rendered the ship unseaworthy, that is not reasonably fit to encounter the perils of the sea." *The Eurysthenes*,

[1976] 2 All E.R. 243, 251, *quoted in Gregoire*, 559 F.Supp. at 598.

**5.** There is, however, language in opinions of the Fifth Circuit and district courts within the circuit which suggest that the knowledge standard has not been consistently applied. *See Insurance Co. of North America*, 733 F.2d at 1165–66 (affirming district court judgment finding breach of implied warranty whether standard is due diligence, knowledge, or bad faith or neglect); *Lemar Towing, Inc. v. Fireman's Fund Insurance Co.*, 352 F.Supp. 652, 665 (E.D. La. 1972) (although stating the rule that breach requires actual knowledge, finding breach based on owner's negligence).

dered the vessel unseaworthy, was negligent in failing to put into an available port for repairs before proceeding to its home port for permanent repairs. The Court stated that "[A] defect of seaworthiness arising after the commencement of the risk, and permitted to continue from bad faith or want of ordinary prudence or diligence on the part of the insured or his agents, discharges the insurer from liability for any loss which is a consequence of such bad faith, or want of prudence or diligence." 124 U.S. at 427, 8 S.Ct. at 546. While acknowledging that this statement is dictum, several courts have held, or suggested in dicta, that this is the standard set by the implied warranty for defects in seaworthiness which arise after the commencement of the risk. *See New York & Puerto Rico Steamship Co. v. Aetna Insurance Co.*, 204 F. 255, 258 (2d Cir. 1913); *Seaman v. Enterprise Fire & Marine Insurance Co.*, 21 F. 778, 781 (C.C.Mo.1884); *King v. Liverpool & London & Globe Insurance Co.*, 37 Misc.2d 822, 238 N.Y.S.2d 799 (N.Y.Sup.Ct.1964) (relying on *Berwind v. Greenwich Insurance Co.*, 114 N.Y. 231, 21 N.E. 151 (1889)).[6]

Additionally, of some significance is the fact that the Federal Circuit Court for the Eastern District of Missouri, the predecessor of this court, gave an instruction in a case some four years before *Union Insurance* clearly employing the negligence standard. *See Seaman v. Enterprise Fire & Marine Insurance Co.*, 21 F. 778, 781 (C.C.Mo.1884). The circuit judge in that case charged the jury:

So, when this boat left the port of St. Louis, it should have been put in that reasonably safe and prudent condition which, having in view all the perils which

might reasonably be expected it would encounter in the voyage, was sufficient to guard against those perils.

*Id.* at 781.

We are mindful of the Supreme Court's admonition that courts should endeavor to preserve the general uniformity between federal maritime law and English maritime law, *see Standard Oil Co. v. United States*, 340 U.S. 54, 59, 71 S.Ct. 135, 138, 95 L.Ed. 68 (1950); *Queen Insurance Co. of America v. Globe & Rutgers Fire Insurance Co.*, 263 U.S. 487, 493, 44 S.Ct. 175, 176–77, 68 L.Ed. 402 (1924), and that under the latter, the insurer can deny recovery in a time policy only if the vessel is sent to sea in an unseaworthy state "with the privity [knowledge] of the assured." However, in light of the plain language of the clause in the insurance policy, the Supreme Court's statement in *Union Insurance*, and the views of the Second Circuit and the New York Court of Appeals, we conclude that the district court did not err in instructing the jury that a vessel owner who acts negligently fails to exercise due diligence.

## II.

L & L next argues that the district court erred in disposing on summary judgment of its claim for slander. L & L contends that statements by Regis Menke, INA's Marine Insurance Manager, to L & L's representatives, during a conference call, suggested that L & L purposefully avoided making necessary repairs and permitted the P–2 to be towed to sea knowing that it would sink, to recover the full value of the insurance policy, which was substantially more than the barge was worth in its

---

**6.** A number of courts have pointed out that the insurance contract in *Union Insurance* contained an express warranty of seaworthiness and express exclusion of loss caused by unseaworthiness or incompetence of the master. Thus the Court's announcement that an implied warranty of seaworthiness arises in a time hull policy at the time the policy attaches, and is complied with if the vessel is seaworthy at the time the policy attaches or, for defects occurring afterward, the defect did not result from the bad faith or negligence of the insured, is

dicta. *See Spot Pack*, 242 F.2d at 388–89 n. 3; *New York, New Haven & Hartford Railroad v. Gray*, 240 F.2d 460, 446 n. 10 (2d Cir.1957); *New York & Puerto Rico Steamship Co.*, 204 F.2d at 258; *see also* G. Gilmore & C. Black, *The Law of Admiralty*, § 2–6, at 65 (2d ed. 1975) (expressing doubt that Supreme Court will uphold implied warranty). Despite these initial misgivings, the American rule appears to have become relatively well embedded in federal maritime law. (See cases cited *supra* p. 6).

present condition.[7] The district court, looking to Missouri law, concluded that Menke's statements were not actionable as slander per se because they did not directly charge L & L with the crime of attempting to defraud the insurance company, nor was that the only inference which could fairly be drawn from the statements. The court concluded that Menke did no more than "suggest * * * the hypothetical possibility that its financial problems had deterred or prevented [L & L] from properly maintaining the barge." *L & L Marine Service,* slip op. at 5. The court further held that under Missouri law, statements imputing commission of a crime are not slanderous per se unless the crime is punishable by imprisonment; since INA is a corporation and cannot be imprisoned, the court reasoned, statements of its representatives could not be slander per se. The court similarly rejected L & L's contention that the remarks were slander per se because they reflected adversely on L & L's fitness for its trade. The court held that Menke's statements had nothing to do with the conduct of L & L's business, and, moreover, were not made to anyone who dealt with L & L in a business capacity.[8]

■ The district court did not err in holding that the allegedly defamatory statements do not constitute slander per se.

Under Missouri law, statements affecting an individual in his business, trade, or profession, or imputing the commission of a crime, are slander per se, and the plaintiff need not prove actual damage to reputation or other damage to recover. *See Brown v. Kitterman,* 443 S.W.2d 146, 153 (Mo.1969). However, where the accusation of crime or improper business practices is not direct, as is the case here, it must be the sole inference that can fairly be drawn from the statements. *See Walker v. Kansas City Star Co.,* 406 S.W.2d 44, 51 (Mo.1966); *Hoog v. Strauss,* 567 S.W.2d 353, 357 (Mo. Ct.App.1978). We agree with the district court that the statements are susceptible of a non-criminal meaning. Indeed, L & L all but concedes this in its argument to this court that imputation of a crime is "a permissible inference." Brief of Appellant, at 40.

Therefore, the district court correctly held that the statements of Menke were not slander per se. Because L & L did not plead actual damages to reputation or other harm, the district court properly granted INA's motion for summary judgment on this claim.

### III.

L & L further contends that the district court erred in directing a verdict on its

---

7. Regis Menke, Manager of Marine Claims for INA, stated that he wished to pose another scenario. The exchange was:
   Regis Menke: "Can we be perfectly frank here?"
   Tom Rollins: "Yes."
   Regis Menke: "Your scenario, Tom, is possible. Let me try another one though."
   Tom Rollins: "All right."
   Regis Menke: "We've got an insured who's got some financial problems. Got a barge that...."
   Tom Rollins: "Okay."
   Regis Menke: ".... but maybe we ought to tow this thing out to sea and let it sink and let the insurance company buy it from us for 300 grand as opposed to the 60 or 70 that it's worth on the market, and we'll put a few pennies in our pocket that will help us with our cash flow problem."
   Tom Rollins: "Your scenario...."
   Regis Menke: "I don't want to accuse, don't misunderstand what I just said. But this is the real world and I think that scenario is also possible."

*L & L Marine Service v. Insurance Company of North America,* No. 83–2897C(B), slip op. at 2–3 (E.D. Mo. Jan. 25, 1985) (memorandum and order granting summary judgment on slander count).

8. The district court also held that there was no publication of the allegedly defamatory statements, since the only persons who heard them were employees or agents of L & L, who could not be considered third parties, and that, in any event, the statements were absolutely privileged since they were invited by or consented to by the agents of L & L. Finally, the district court found that the cause of action for slander originated in Illinois, and was not brought within the one-year Illinois statute of limitations, which is adopted by Missouri law under such circumstances. Because we agree with the district court that the statements were not slanderous per se under Missouri law, we need not address these alternative holdings.

claim for wreck removal expenses under the P & I provisions of the policy. L & L sought recovery under the P & I policy for indemnification of approximately $24,000 it owed a salvage concern for the removal of the capsized P–2. At trial, INA moved for a directed verdict on this count on the ground that L & L had failed to plead that it first paid the wreck removal expenses as required by the P & I provision. The district court granted the motion, finding that L & L failed to plead or prove that INA had waived the policy condition, and forbade L & L from introducing testimony to demonstrate that INA had waived the policy condition. L & L contends there that the district court erred in not permitting it to amend the pleadings to raise waiver, and introduce evidence relevant to the defense.

Federal Rule of Civil Procedure 15 permits a party to amend its pleadings, under certain circumstances, to conform to proof at trial. However, it is well settled that the decision to grant or deny an amendment to the pleadings is within the sound discretion of the district court, and will be reviewed on appeal for abuse of discretion only. *Corsica Livestock Co. v. Sumitomo Bank,* 726 F.2d 374, 377 (8th Cir.1983); *Tatum v. Frisco Transportation Co.,* 626 F.2d 55, 59 (8th Cir.1980).

■ The district court found that L & L not only failed to plead waiver, an affirmative defense, but conceded in their pleadings that all the policy conditions had been met. It was not until late in the trial that L & L attempted for the first time to present evidence that INA had waived the policy condition requiring the assured to prepay all wreck expenses to be indemnified. We cannot conclude that the district court abused its discretion in denying L & L leave to amend its complaint late in the proceedings. Nor can we say that INA impliedly consented to try this issue by failing to object to evidence relevant to the issue. *See Corsica Livestock Sales, Inc.,* 726 F.2d at 377; *Nielson v. Armstrong Rubber Co.,* 570 F.2d 272, 275 (8th Cir. 1978). INA objected each time L & L

sought to introduce evidence on this question.

Since L & L failed to plead waiver, and was not improperly denied leave to amend its complaint to plead waiver, the district court properly directed a verdict on its count for recovery under the P & I provisions of the insurance policy.

We affirm the judgment of the district court.